[Civ. No. 14451. First Dist., Div. One. Feb. 19, 1951.]

LAVERNE VALLELUNGA, as Administratrix, etc., Respondent, v. LORA GOMES, as Executrix, etc., Appellant.

Kirby, Pasquinelli & O'Connor, Edward M. Fellows and Timothy A. O'Connor for Appellant.

John H. Machado for Respondent.

WOOD (Fred B.), J.—Defendant, executrix of the will and estate of Alfred Gomes, appeals from an order denying her motion of October 17, 1949, for an order directing the payment to said estate of the residue of a deposit that had been made with the court pursuant to the judgment that had been rendered in the action on November 30, 1945, a judgment which had become final.

The action was brought May 12, 1945, by Emma Gomes against the executrix of the estate of Alfred Gomes (Emma's deceased, divorced husband) to establish her claim against

the estate for money due and yet to become due for support of certain of their children and for money payable to Emma for raising and caring for the children, a claim predicated in part upon the provisions of a final decree of divorce between Emma and Alfred, entered May 14, 1941, and in part upon the provisions of a support and property settlement agreement made by them on the 24th of January, 1940.

The judgment rendered herein on November 30, 1945, decreed, in part, that Emma Gomes then had a ''valid and existing claim in the amount of $4,277.85 against'' said estate ''and the same is allowed for said amount,''* and that ''*the sum of $2,280.00 of said claim is due and payable* out of the assets of said estate . . . to plaintiff [Emma Gomes] at the rate of $10.00 per month commencing October 31, 1947, or from the date of marriage of said Alfred Gomes [Jr.] if he marries prior to October 31, 1947, *until said amount is paid in full, subject, however, to abatement upon the marriage of plaintiff* herein. It is ordered and decreed that the said executrix . . . be directed to pay into the above-entitled court said amount out of the assets of said estate . . . , *such sum to be paid over to plaintiff* in said monthly installments of $10.00 per month and at such times as said installments accrue *until the full sum of $2,280.00 has been paid unless abated as herein set forth.''* (Emphasis added.)

On January 28, 1946, the money was paid into court pursuant to the judgment. In due course the monthly $10 payments to Emma Gomes commenced. They continued to be made until her death on May 9, 1949, when a balance of $2,110 remained in the fund. This unpaid balance, appellant claims, reverted to the estate of Alfred. It does not expressly appear in the record before us that Emma did or did not marry subsequent to rendition of the judgment. From the fact that the monthly installments were paid her until her death, it is inferable that she did not marry. However, that is not an issue presented by appellant, either upon her motion in the superior court or upon this appeal. Her claim is predicated solely upon the theory that the judgment gave Emma but a life estate or interest in the fund, thereby creating in the estate (which provided the fund) a reversionary interest

---

*The $4,277.85 included the following items: $1,532.85 overdue and unpaid for support of the children, as of the commencement of the trial herein, (2) $465 for support of the one remaining unmarried minor child (Alfred, Jr.) from the date of trial until that child's twenty-first birthday, and (3) $2,280 payable to Emma as provided in the above excerpt from the judgment.

that became a present right of title to and enjoyment of the balance of the fund remaining undue and unpaid at the time of Emma's death.

We do not so interpret the judgment. It says that $2,280 of Emma's claim against the estate "is due and payable" to Emma; that it is payable "at the rate" of $10 per month "until said amount is paid in full," subject to abatement "upon the marriage" of Emma; and that the executrix shall pay that amount ($2,280) into court, "such sum to be paid over" to Emma "in said monthly installments . . . until the full sum of $2,280.00 has been paid in full" unless "abated as herein set forth."

By these words the court expressed, as clearly and unmistakably as available words permit, the concept that the entire fund belonged to Emma, enjoyable by her in monthly installments, subject to defeasance only if she should marry prior to exhaustion of the fund. From and after her death there can be no defeasance, for the event which would bring about a defeasance no longer can occur. Necessarily, the unpaid balance of the fund goes to Emma's grantees, legatees, or heirs.

Appellant urges that this judgment should be read in the light of the issues framed by the pleadings in the action, and the facts found by the court after trial of those issues. Such an inquiry, says the appellant, will demonstrate that the judgment was intended to declare and enforce certain provisions of a property settlement agreement made by Emma and the decedent Alfred prior to their divorce; that those provisions, manifestly, obligated him to pay her $10 per month from and after the maturity or marriage of all of three of their minor children until Emma's death or remarriage. Therefore, appellant would conclude, it was the reasonable intendment of the judgment, in creating a fund for such monthly payments, that the fund abate upon Emma's death or remarriage.

Respondent contends that no such inquiry is in order because the language of the judgment is so clear and unambiguous it admits of no such aid to interpretation. That is probably true. It happens, however, that the suggested inquiry supports the plain wording, the clear meaning, of the judgment, and demonstrates that the judge who signed and filed the judgment meant what he said.

The property settlement agreement, as pleaded in the complaint and found by the court, after making an allocation of

property and providing for care and custody of three of their children by Emma and payments to her therefor by Alfred, declared that upon all three children attaining 21 or marrying, "then from that time on first party [Alfred] shall pay to second party [Emma], only if second party is still single at that time, the sum of $10.00 per month so long as second party remains single, but if she remarries said payments shall terminate," and that "It is understood that said monthly sum [$10 per month] is not deemed to be alimony, but that the same is being paid to second party [Emma] in consideration of her raising and caring for said minor children."

The agreement doubtless did contemplate cessation of the $10 monthly payments to Emma in the event of her death or remarriage.

But the judgment did not so provide. Emma's amended complaint, in respect to this part of her claim, alleged that she had a life expectancy of 19 years and that a sum of money representing $10 per month over a 19-year period had become and was due and owing to her. She prayed for a money judgment in an amount which included that sum, and for such other and further relief as might be equitable in the premises. Alfred's executrix, in her answer, denied these allegations and alleged that upon Alfred's death his obligation to make payments under the agreement terminated, save as to those which had already accrued and remained unpaid.

Upon these issues the trial court found that "the life expectancy of plaintiff from October 31, 1947, is a period of nineteen (19) years," and that "there is due and payable to plaintiff out of the estate of said deceased the sum of $2,280.00" ($10 per month for 228 months, 19 years), "payable to plaintiff from October 31, 1947, or from the date of marriage of said Alfred Gomes [Jr.] prior to October 31, 1947, at the rate of $10.00 per month, subject, however, to abatement upon the marriage of plaintiff." From these findings the court drew the conclusion of law that plaintiff was entitled to judgment for $2,280 as provided in that portion of the judgment quoted early in this opinion.

It is apparent that in this portion of the findings, conclusions of law, and judgment, the court was not following the precise terms of the property settlement agreement. It was modifying them by liquidating the amount payable to Emma.

Under the agreement (assuming it did not terminate, as to future payments, upon the death of Alfred, Sr.; the court

found it did not) Emma stood to receive more than $2,280 if she outlived her 19 years' expectancy. If she died sooner, she would receive less. Liquidation of this amount and a present award of it to Emma would avoid keeping the estate open for an indefinite period to make monthly payments. An immediate lump sum payment of $2,280 was impracticable because of the possibility of Emma's remarriage. The impounding of the money, coupled with the provision for monthly payments subject to abatement upon Emma's remarriage, furnished a practical solution to that problem. That, it would seem, is what the court intended, writing its judgment in words appropriate to the carrying out of that intent.

■ Whether that method of meeting the situation was legally proper in every respect would be a question for consideration upon direct attack, as upon an appeal from the judgment, not in the instant proceeding, the judgment having become final. The fact that the defendant, executrix of the will and estate of Alfred, Sr., took no appeal is some indication that the practical solution worked out by the court was at the time agreeable and acceptable to all parties in interest.

An additional point is urged by respondent. She suggests that appellant should have presented the issues here involved by way of a new and independent action, not by way of a motion in the original action after final judgment.

We do not deem this point well taken. The motion presented a question of interpretation, not modification, of the judgment, and, if a certain interpretation were made, distribution of the residue of a fund in the custody of the court.

■ When a court takes custody of a fund it assumes authority and responsibility over that fund which it does not necessarily lose upon entry of judgment or dismissal of the action. The applicable statute declares that, under the circumstances which it describes, a court may order money, or other thing capable of delivery, "deposited in court . . . upon such conditions as may be just, subject to the further direction of the court." (Code Civ. Proc., § 572.) In such a case the money is delivered to the clerk who must, unless otherwise directed by law, deposit it with the county treasurer, to be held by him "subject to the order of the court." (Code Civ. Proc., § 573.) If the order for deposit is disobeyed, "the court, beside punishing the disobedience, may make an order requiring the sheriff, constable, or marshal to take the money, or thing, and deposit or deliver it in conformity with the direction of the court." (Code Civ. Proc., § 574.) This does

not suggest that the court may make but a first and final order concerning a deposit. It suggests, instead, a continuing jurisdiction over the deposit throughout the period of the court's custody. In construing the predecessor statute (Code Civ. Proc., § 2104; Code Amendts. 1873-4, p. 394) the appellate court in *Higgins* v. *Keyes,* 5 Cal.App. 482 [90 P. 972], said that while the county treasurer holds the corpus of the fund, "he does so merely as custodian for the court, and cannot be compelled to pay the money to anyone except on the order of the court holding the deposit. Until such an order has been made there is no duty imposed upon either the clerk or treasurer to pay out the money." (P. 485.) The statute, clearly, is consonant with the principle (enunciated in *In re Shyvers* [Cal., S.D.], 33 F. Supp. 643) that a court of equity has the duty of administering funds held in the custody of the law, distributing them to such of the parties as, after due hearing, show themselves entitled thereto, a duty which continues even after dismissal of the action in which the court gained custody. Concerning money received in custody by a court (as evidence in a pending action), it was said in *Union Bank & Trust Co.* v. *Los Angeles County,* 2 Cal.App.2d 600 [38 P.2d 442], "The court alone had power to order disposition of the money after the purpose of such legal custody had been accomplished." (P. 610.) This power of a court of equity includes the power to order restitution of a deposit that is withdrawn without authority, and may be exercised in the suit after final judgment. This principle we find well expressed in *Agricultural Bond & Credit Corp.* v. *Courtenay Farmers Co-op. Ass'n.,* 66 N.D. 122 [262 N.W. 453], in these words: "The power of the court over moneys in its custody *continues until they are distributed* pursuant to final decrees in the cases in which the moneys are paid, and if from any cause such moneys are previously withdrawn without authority of law, the court can, by summary proceedings, compel their restitution. Until a decree of distribution is made and enforced, the summary power of the court to compel restitution remains intact. *Moneys paid into court to the credit of a suit in equity in the same court are to be disposed of in that suit,* and *no orders* relating to such moneys *can properly be made in another suit which does not include the same parties as the former suit.*" (262 N.W. at pp. 457-458; emphasis added.)

The four cases last mentioned were cited with approval by our Supreme Court in support of its statement that after

dismissal of an action during the pendency of which a court has taken custody of a deposit, that court "has the power to determine the disposition of funds held in *custodia legis* after notice to all parties interested." (*Lord v. Superior Court,* 27 Cal.2d 855, 858 [168 P.2d 14].) Examination of the record in the Lord case shows that the petitioner for the writ of prohibition which the Supreme Court denied sought to restrain the superior court from considering and acting upon a motion for distribution of the funds on deposit, a motion made in the dismissed action after the order dismissing the action had become final. The petitioner claimed that the superior court had no jurisdiction to entertain such a motion in the original action after its dismissal. The statement which we have quoted is significant, and persuasive of the principle announced, even though it also appeared that the superior court when ordering the deposit expressly reserved a continuing jurisdiction over all moneys in the fund.

An equally significant statement appears in *Market Street Railway Co. v. Railroad Com.,* 28 Cal.2d 363 [171 P.2d 875], a proceeding to review an order of the Railroad Commission reducing street railway fares. Early in the proceeding the court stayed execution of the commission's order and directed the utility to maintain a deposit in court as security for certain purposes, including the amount of the excess of the old over the new fare collected during the pendency of the proceeding. On July 3, 1944, the court rendered its decision affirming the order of the commission. (*Market St. Ry. Co. v. Railroad Com.,* 24 Cal.2d 378 [150 P.2d 196].) Subsequently, in the same proceeding, the utility and the city and county of San Francisco, respectively, moved for modifications of the stay order. The state contended that the provisions of the order had become final and could no longer be disturbed. The court overruled that contention, principally upon the ground that in its original order of deposit the court expressly retained jurisdiction to modify its order on the application of a party to the proceeding or upon its own motion, but also upon the ground of its inherent power to dispose of the impounded moneys. As to the nature of the fund and the court's power and duty in respect to it, the court said: "The excess fares are impounded in the custody of the court, although they are represented by the securities on deposit. (*Natural Gas Pipeline Co. v. Federal Power Com.,* 128 F.2d 481, 485.) This court has the power and the responsibility of protecting the fund and of disposing of it in accordance with

the applicable principles of law and equity for the protection of the litigants and the public whose interests are affected by the final disposition thereof." (28 Cal.2d at p. 367.)

Confirmatory of the principle that a court of equity has inherent power to supervise the execution of its orders, even after they have become final, is the holding in *Hercules Glue Co., Ltd.* v. *Littooy,* 45 Cal.App.2d 42 [113 P.2d 490], and the statement, at page 45, that "a court of chancery has the inherent power 'to supervise the execution of its orders, and even to modify them in ways affecting only the details of their performance.' "

The complaint in the instant case invoked the equity powers of the court by requesting liquidation of the amount of plaintiff's claim upon the basis of her life expectancy, and a present award of that amount. The prayer for general relief embraced any remedy (such as the impounding of the amount awarded) which the court might find meet in equity. It was not an action or proceeding merely to establish a claim for money against an estate in probate. (See discussion in *Guardianship of Cornaz,* 8 Cal.2d 347, 356-359 [65 P.2d 784].)

We conclude, therefore, that the superior court had jurisdiction to hear and decide appellant's motion upon the merits.

The order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.