[Nos. 14471-5-I; 14476-6-I. Division One. August 25, 1986.]

GARY A. WILSON, *Appellant*, v. DONALD R. HENKLE, ET AL, *Respondents*.

DONALD R. HENKLE, ET AL, *Respondents*, v. JEREMIAH McCORMICK, *Appellant*.

*Jeremiah M. McCormick,* pro se, and *Orvin Messegee* and *Jerry A. Creim,* for appellants.

*Robert E. Ordal,* for respondents.

SWANSON, J.—This a consolidated appeal. Gary A. Wilson appeals the superior court order applying funds held in the court's registry in partial satisfaction of the superior court judgment for $7,500.21 in favor of Donald R. and Barbara J. Henkle, husband and wife, against Wilson in an unlawful detainer action. Jeremiah M. McCormick, who was Wilson's attorney in Wilson's quiet title action against the Henkles and in the Henkles' unlawful detainer action against Wilson, appeals the superior court judgment against him awarding $4,299.25 to the Henkles as sanctions for McCormick's improper conduct in the consolidated trial court actions involving Wilson and the Henkles.

In 1983 the Henkles purchased Wilson's property at a nonjudicial foreclosure sale for $31,101. After the holder of the deed of trust and the sale costs were paid, the trustee deposited the remaining $15,823.54 into the King County Superior Court registry. After junior creditors were paid, about $6,000 remained in the court deposit. Wilson brought an action against the Henkles to set aside the sale and the Henkles brought an unlawful detainer action against Wilson. In September 1983 the Henkles obtained a court order removing the deposited funds from the original cause number and depositing the funds in the cause number for the Wilson v. Henkle action. After the two consolidated actions were tried, Wilson's complaint to set aside the sale was dismissed and the Henkles were awarded a judgment against Wilson in their unlawful detainer action.

When the judgment was presented in December 1983, the Henkles requested that an order be entered that the remaining deposited funds be paid in partial satisfaction of their judgment against Wilson. The trial court declined to rule on the Henkles' motion since the appeal period had not yet expired and in January 1984, the motion was renewed. At that hearing McCormick presented the trial judge with an affidavit of prejudice. The motion to disburse the funds was noted for a February 9, 1984 hearing.

Before the February 9 hearing, McCormick obtained a confession of judgment from his client, Wilson, in a new action, McCormick v. Wilson, and then obtained a judgment to garnish the funds held in the cause number for the consolidated cases. When McCormick obtained the ex parte judgment against the garnishee defendant, he failed to inform the court commissioner that the ownership of the funds was controverted and that a hearing on the disbursement of the funds was scheduled for 2 days later. The following day upon McCormick's request due to a claimed injury, the Henkles' attorney, Robert Ordal, agreed to a continuance of the hearing.

Early in the morning of February 9, Ordal was informed by the Superior Court Clerk's Office that the funds had been paid to McCormick. When Ordal set forth the facts to the court commissioner, the commissioner called McCormick's office with the oral order that the Clerk's check should not be cashed. At about 10 a.m. that morning McCormick cashed the check. That same day the commissioner signed an order vacating the prior judgment based on the garnishment in McCormick's favor. On February 10 a new action, Henkle v. McCormick, was filed and a temporary restraining order obtained. In compliance with that order, the financial institution at which McCormick had deposited the funds returned the funds into the court's registry. After a February 14, 1984, hearing at which the trial judge declined to disqualify himself, the funds were awarded to the Henkles in partial satisfaction of their judgment against Wilson.

Following a hearing on the Henkles' motion for terms against McCormick, they were awarded a judgment for $4,299.25 for their attorney fees and costs in recovering the funds paid to McCormick. The judgment was entered on May 8, 1984, but upon McCormick's motion to vacate the judgment based upon a lack of notice, the judgment was vacated and immediately reinstated on June 25, 1984, after proper notice was given. The Court of Appeals granted the Henkles' motion to permit the Superior Court to consider

and rule on their motion to have the judgment of June 25, 1984 entered nunc pro tunc. McCormick appeals the judgment for terms and Wilson appeals the order disbursing the funds to the Henkles.

The main issues in this appeal are (1) whether the court commissioner abused his discretion in vacating without notice and a hearing his prior judgment ordering the garnishee, the King County Superior Court Clerk's Office, to pay to McCormick, Wilson's attorney, funds held in the court's registry to satisfy McCormick's judgment against Wilson for attorney fees; (2) whether the trial court abused its discretion in applying the court–held funds, which were the surplus proceeds from the trustee's sale of Wilson's real property to the Henkles, in partial satisfaction of the judgment in favor of the Henkles in their unlawful detainer action against Wilson; (3) whether the superior court had the authority to impose sanctions in the form of attorney fees against an attorney for improper litigation conduct; and (4) whether appellate attorney fees should be awarded to the respondents.

## VACATION OF JUDGMENT

A motion to vacate a judgment is addressed to the sound discretion of the trial court, whose judgment will be undisturbed absent a showing of a manifest abuse of discretion. *State v. Scott,* 92 Wn.2d 209, 212, 595 P.2d 549 (1979). Relief from a final judgment or order may be sought under CR 60(b) only upon a party's motion and under CR 60(c) only upon a party's commencement of a separate action. *Krueger Eng'g, Inc. v. Sessums,* 26 Wn. App. 721, 724, 615 P.2d 502 (1980).

Upon application of a motion to vacate, under CR 60(e) the adverse party must be given notice and the opportunity to appear and show cause why the requested relief should not be granted. CR 60(e)(2); *In re Marriage of Mahalingam,* 21 Wn. App. 228, 231, 584 P.2d 971 (1978). Here CR 60(e)'s notice and hearing requirements were not met before the judgment against the garnishee defendant was

vacated. Thus the vacation of the judgment can be upheld only if it was done on the court's own motion.

CR 60(a) authorizes on the court's own motion the correction of clerical mistakes in a judgment or errors therein arising from oversight or omission. *Entranco Eng'rs v. Envirodyne, Inc.*, 34 Wn. App. 503, 507, 662 P.2d 73 (1983); *Krueger Eng'g, Inc. v. Sessums, supra* at 723. Such corrections may be made without notice to the parties affected. *See Barouh v. Israel*, 46 Wn.2d 327, 333, 281 P.2d 238 (1955). However, an intentional act of the court, even if in error, cannot be corrected under this provision. *Krueger Eng'g, Inc. v. Sessums, supra.*

McCormick nevertheless concedes, citing *Morrison v. Berlin*, 37 Wash. 600, 79 P. 1114 (1905), that the court on its own motion may vacate a judgment which is void on its face but argues that the judgment entered here against the garnishee defendant was not such a judgment.[1] *See Krueger Eng'g, Inc. v. Sessums, supra.*

In *Morrison v. Berlin* the court upheld against a collateral attack the vacation of a prior judgment where the trial court had found that the judgment had been fraudulently entered and was void. The *Morrison* court held that a void judgment could be set aside without notice to the adverse party either on a party's or on the court's own motion. The *Morrison* court further stated that the fact that nothing appeared on the face of the record to indicate that the first judgment was void was no bar to upholding the vacation of the judgment since in a collateral attack all intendments are in favor of their regularity and inasmuch as the trial court found that the first judgment was void and should be

---

[1]In *State v. Sampson*, 82 Wn.2d 663, 666, 513 P.2d 60 (1973), the court held that unless a question exists as to whether the judgment entered is actually the judgment of the court, the court has no power to modify or vacate a judgment absent a showing of a statutory (now CR 60) ground. *Seattle–First Nat'l Bank v. Treiber*, 13 Wn. App. 478, 482, 534 P.2d 1376 (1975). In *State v. Scott*, 92 Wn.2d 209, 212, 595 P.2d 549 (1979), our Supreme Court stated in dicta that the trial court's justification for its vacation of the orders based upon its inherent power "may be sound," but it did not address that question since it determined that CR 60(b)(11) controlled the outcome in that case.

vacated, the reviewing court presumed that the trial court's finding was based upon sufficient cause since nothing appeared to the contrary. *Morrison,* at 602–03.

In *Marinovich v. Lindh,* 127 Wash. 349, 351, 220 P. 807 (1923), the reviewing court upheld the trial court's vacation of a prior default judgment and modification of a subsequent judgment entered on the merits where the two judgments conflicted and the invalidity appeared on the face of the record. *Seattle–First Nat'l Bank v. Treiber,* 13 Wn. App. 478, 481 n.5, 534 P.2d 1376 (1975).

Here a superior court judge's unchallenged finding of fact 2 following the hearing on the Henkles' motion for terms against attorney McCormick is that the established custom and practice in the court commissioner's office is that the commissioner does not read the court files but rather relies on the attorneys to bring to his attention significant matters affecting the relief sought. On his vacation order the court commissioner wrote that at the time that he issued the judgment against the garnishee defendant, he had not been informed by McCormick that the ownership of the funds sought to be garnished was controverted or that a contested hearing on the funds was scheduled to be held 2 days later.

McCormick failed to call to the commissioner's attention the back of the garnishee defendant's answer to the writ of garnishment, which states:

> It has not yet been determined by court order how that money is to be distributed or to whom it belongs. Gary Wilson, defendant in this garnishment, was party to the proceeding in Cause No. 83–2–09353–8. It is not known by garnishee defendant what interest, if any, Gary Wilson has in the funds just described.
>
> Pursuant to the aforementioned court order, the Clerk of the Court will continue to keep the funds in question in a "blocked" account at Washington Mutual Savings Bank until ordered by the Court to do otherwise.

At the hearing on the Henkles' motion, the court commissioner testified that had this part of the garnishee's answer been revealed to him by McCormick, he would not have

signed the judgment for garnishment in McCormick's favor.

■ Here the judgment was procured fraudulently so that it was void and its invalidity appeared on the face of the record so that either on the Henkles' or on the commissioner's own motion, the court commissioner had the power to vacate the void judgment without notice to McCormick. *Morrison v. Berlin, supra.* The court commissioner did not manifestly abuse his discretion here. *State v. Scott, supra.*

## COURT DEPOSIT OF FUNDS

■ Deposits of funds in court are governed by RCW 4.44.480[2] through 4.44.500 and CR 67. A court which has custody of funds has the authority and the duty to distribute the funds to the party or parties that show themselves entitled thereto, and this duty continues even after the entry of judgment or dismissal of the action in which the court gained custody of the funds. *Vallelunga v. Gomes,* 102 Cal. App. 2d 374, 227 P.2d 550, 553 (1951). Such a court

> has the power and the responsibility of protecting the fund and of disposing of it in accordance with the applicable principles of law and equity for the protection of the litigants and the public whose interests are affected by the final disposition thereof. The court is said to be free, in the discharge of that duty and responsibility, to use broad discretion in the exercise of its powers so as to avoid an unlawful or unjust result.

*Market St. Ry. v. Railroad Comm'n,* 28 Cal. 2d 363, 367, 171 P.2d 875, 878, *cert. denied,* 329 U.S. 793 (1946), *reh'g denied,* 329 U.S. 833 (1947). Thus the court has wide discretion in the disposition of deposited funds. *Market St. Ry. v. Railroad Comm'n, supra.*

The appellants argue that the Henkles were not entitled

---

[2]RCW 4.44.480 provides:

"When it is admitted by the pleading or examination of a party, that he has in his possession, or under his control, any money, or other thing capable of delivery, which being the subject of the litigation, is held by him as trustee for another party, or which belongs or is due to another party, the court may order the same to be deposited in court, or delivered to such party, with or without security, subject to the further direction of the court."

to the court–held funds since McCormick had filed an attorney's lien whereas the Henkles had neither attached nor garnished the funds. However, even if an attorney's lien may have priority over a claimant's unsatisfied judgment or an attachment filed after the attorney's lien, *see Barney, Cromwell, Weiner & Mendoza, P.S. v. Kreider,* 32 Wn. App. 904, 906–07, 650 P.2d 1133 (1982), *review denied,* 98 Wn.2d 1019 (1983), here McCormick had no prior right to the funds based upon an attorney's lien.

RCW 60.40.010, the attorney's lien statute, provides in part:

> An attorney has a lien for his compensation, whether specially agreed upon or implied, as hereinafter provided: (1) Upon the papers of his client, which have come into his possession in the course of his professional employment; (2) upon money in his hands belonging to his client; (3) upon money in the hands of the adverse party in an action or proceeding, in which the attorney was employed, from the time of giving notice of the lien to that party; (4) upon a judgment to the extent of the value of any services performed by him in the action, or if the services were rendered under a special agreement, for the sum due under such agreement . . .

Assuming that McCormick's claim of lien was sufficiently definite in identifying the property subject to the lien, *see Barney, Cromwell, Weiner & Mendoza, P.S. v. Kreider, supra* at 907, the only arguable bases for McCormick's assertion of a claim of lien are under subsections (3) and (4). However, no attorney's lien is authorized under RCW 60.40.010(3) or (4) where the attorney was unsuccessful in obtaining a judgment for his client against the adverse party. *Suleiman v. Cantino,* 33 Wn. App. 602, 606–07, 656 P.2d 1122 (1983). Here McCormick failed to obtain a successful judgment for his client against the Henkles. The attorney's lien statute is in derogation of the common law and must be strictly construed. *See Ross v. Scannell,* 97 Wn.2d 598, 604–05, 647 P.2d 1004 (1982). In the instant case McCormick had no prior right to the court–held funds based upon an attorney's lien.

Moreover, RCW 61.24.080,[3] which governs the disposition of the proceeds of a trustee's sale, poses no bar to the disbursement of the funds to the Henkles since it merely mandates that lien claims against the property that were eliminated by the trustee's sale shall attach to any surplus proceeds. Here the appellants concede that the disputed funds were the excess proceeds from the trustee's sale of Wilson's property after "the trust beneficiary and other entitled creditors had been fully paid (including costs and attorney's fees)." Brief of Appellant, at 16. It cannot be said that the trial court abused its discretion in disbursing the funds in partial satisfaction of the Henkles' judgment against Wilson. *Market St. Ry. v. Railroad Comm'n, supra.*

In relation to the disbursement of the funds, the appellants argue that the trial court erred in denying Wilson's motion for a change in the judge supported by an affidavit of prejudice. Under RCW 4.12.040 and .050 a party litigant is entitled, as a matter of right, to such a change upon the timely filing of a motion and affidavit of prejudice against a judge. *State v. Cockrell*, 102 Wn.2d 561, 565, 689 P.2d 32 (1984); *State v. Dixon*, 74 Wn.2d 700, 702, 446 P.2d 329 (1968).

RCW 4.12.050 entitles "[a]ny party to or any attorney appearing in any action or proceeding" to file a motion supported by an affidavit of prejudice against the judge provided that it is filed before the trial court rules on any party's motion or makes a ruling which involves the exercise of discretion. *In re Estate of Shaughnessy*, 104 Wn.2d

---

[3]RCW 61.24.080 provides in part:

"The trustee shall apply the proceeds of the sale as follows:

". . .

"(3) The surplus, if any, less the clerk's filing fee shall be deposited together with a copy of the recorded notice of sale with the clerk of the superior court of the county in which the sale took place. . . . Upon depositing such surplus, the trustee shall be discharged from all further responsibilities therefor. Interest in, or liens or claims of liens against the property eliminated by sale under this section shall attach to such surplus in the order of priority that it had attached to the property. The clerk shall not disburse such surplus except upon order of the superior court of such county."

89, 92, 702 P.2d 132 (1985). The questions here are whether the hearing on the Henkles' motion for disbursement of the funds was a "proceeding" triggering the application of the statute and, if so, whether the trial judge had made any discretionary rulings so that the filing of the affidavit was untimely. *In re Estate of Shaughnessy, supra; Ginsberg v. Katz,* 27 Wn. App. 593, 597, 619 P.2d 995 (1980).

In determining that a proceeding to modify a divorce decree's child custody provisions is a new "proceeding" within the meaning of the statute, the court in *State ex rel. Mauerman v. Superior Court,* 44 Wn.2d 828, 830, 271 P.2d 435 (1954) noted that the proceeding

> presents new issues arising out of new facts occurring since the entry of the decree. It is not ancillary to or in aid of the enforcement of the divorce decree.

Our State Supreme Court recently held that just as a post–will contest hearing at which a new administrator was appointed was not a new "proceeding" for purposes of the affidavit of prejudice statute, *In re Estate of Thomas,* 167 Wash. 127, 8 P.2d 963 (1932), nor was a post–will contest hearing granting attorney fees such a proceeding under the statute. *In re Estate of Shaughnessy, supra* at 93. Here the hearing on the motion to disburse the funds was not a new "proceeding" within the meaning of the statute since it presented no new issues arising out of new facts but rather was an ancillary proceeding in aid of the enforcement of the Henkles' judgment against Wilson. *Cf. State ex rel. Mauerman v. Superior Court, supra.*

Moreover, even if the hearing here was a new "proceeding" under the statute, the filing of the affidavit of prejudice was untimely. RCW 4.12.050 expressly excludes from the discretionary classification certain trial court actions:

> [T]he arrangement of the calendar, the setting of an action, motion or proceeding down for hearing or trial, the arraignment of the accused in a criminal action or the fixing of bail, shall not be construed as a ruling or order involving discretion within the meaning of this proviso . . .

Here at the time that the judgment was presented in the unlawful detainer action, the trial court made a discretionary ruling that the motion for distribution of the funds was premature since the appeal period had not yet run so that the subsequent filing of the affidavit of prejudice was untimely. *Ginsberg v. Katz, supra* at 597–98.

### IMPOSITION OF SANCTIONS

Citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980), the Henkles argue that courts have the inherent power to assess attorney fees against the opposing counsel for bad faith litigation conduct. The Court in *Roadway Express, Inc. v. Piper*, 100 S. Ct. at 2463–64, stated that federal courts' inherent powers are those which are necessary to the exercise of all others, and since inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion. Nevertheless, the Court held that as an exception to the general rule that a litigant cannot recover his counsel fees, federal courts have the inherent power to assess attorney fees against counsel for bad faith actions in bringing a lawsuit as well as in conducting litigation, provided that they are given fair notice and an opportunity for a hearing on the record. *See Morris v. Adams–Millis Corp.*, 758 F.2d 1352, 1358 n.7 (10th Cir. 1985).

RCW 2.28.010(5) provides:

> Every court of justice has power—. . . (5) To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto.

The trial court's unchallenged conclusion of law 1 is that the court has "the inherent power to impose sanctions against an attorney for inappropriate and improper conduct." We agree.

In 1983, following the Supreme Court decision in *Roadway Express, Inc. v. Piper*, rule 11 of the Federal Rules of Civil Procedure was amended to include sanctions for its

violation. *Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030, 1036 n.10 (9th Cir. 1985), *cert. denied,* 106 S. Ct. 2919 (1986); 5 C. Wright & A. Miller, *Federal Practice* § 1331, at 153 (1969 & Supp. 1985). The amended rule 11 provides in part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The Notes of the Advisory Committee state that the amended rule attempts to expand

> the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation. See, *e.g., Roadway Express, Inc. v. Piper,* 447 U.S. 752, (1980); *Hall v. Cole,* 412 U.S. 1, 5 (1973).

*See Cook v. Peter Kiewit Sons Co., supra.* The Notes further state that the amended rule should eliminate any doubt as to the "propriety of assessing sanctions against the attorney."

██ In 1985 our state's CR 11 was amended to incorporate essentially the same language as the amended federal rule 11. The amended CR 11 authorizes the assessment of a sanction, including reasonable attorney fees, against an attorney in certain circumstances. The imposition of such a sanction is not outside the scope of a court's authority. A Washington court has the inherent power to assess the liti-

gation expenses, including attorney fees, against an attorney for bad faith litigation conduct. *See Roadway Express, Inc. v. Piper, supra.* The trial court's finding of fact 3 that McCormick's conduct was "inappropriate and improper," which is tantamount to a finding of bad faith, is supported by the record evidence. Thus the imposition of sanctions in the amount of the Henkles' attorney fees and costs was proper.

McCormick's reliance upon *Hahn v. Boeing Co.,* 95 Wn.2d 28, 621 P.2d 1263, 20 A.L.R.4th 846 (1980) is misplaced. The hearing here was not a disciplinary proceeding. While the superior court lacks the authority to conduct disciplinary proceedings, it has the "authority and duty to see to the ethical conduct of attorneys in proceedings before it." *Hahn,* at 34. Further, the record discloses no objection raised at trial to the judgment amount; thus any claimed error has not been preserved for appeal. RAP 2.5(a); *State v. Martin,* 101 Wn.2d 713, 744, 684 P.2d 651 (1984).

Absent grounds for an appellate attorney fee award, attorney fees on appeal are denied. *See Mellor v. Chamberlin,* 100 Wn.2d 643, 649, 673 P.2d 610 (1983).

Affirmed.

SCHOLFIELD, C.J., and COLEMAN, J., concur.