# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MATTHEW N. ORTEGA and JENNIFER
C. ORTEGA, husband and wife and
members of a marital community,

        Appellants,

        v.

NORTHWEST TRUSTEE SERVICES,
INC., trustee; MORTGAGE ELECTRONIC
REGISTRATION SERVICES INC.; HSBC
BANK USA, national association as
trustee for Wells Fargo Asset Securities
Corp. mortgage asset-backed pass-
through certificates, series 2008-1; WELLS
FARGO HOME MORTGAGE COUNTRY
TOWN APPRAISAL SERVICES, INC., a
Washington corporation;

        Respondents,

GOLF SAVINGS BANK, a Washington
stock savings bank; KEYNA WILLET,
Individually, and as a member of a marital
community; MIKE WILLET, husband, and
member of marital community,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 69652-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 18, 2014

APPELWICK, J. — The Ortegas' action to enjoin foreclosure of the deed of trust on their residence was dismissed with prejudice when they failed to make court ordered mortgage payments into the court registry. Wells Fargo has actual possession of the original note secured by the deed of trust encumbering the Ortegas' real property and is a lawful beneficiary under the deed of trust act, chapter 61.24 RCW. The trial court has no discretion to restrain a nonjudicial foreclosure sale without requiring mortgage payments into the court registry, pursuant to RCW 61.24.130(1). We affirm.

## FACTS

On November 8, 2007, Matthew and Jennifer Ortega obtained an $805,000 home loan from Golf Savings Bank. They signed a fixed rate promissory note with a 120 month interest only period. To secure the note, the Ortegas signed a deed of trust naming Golf as the lender, Chicago Title Insurance Company as the trustee, and Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary and "nominee for [the] Lender and [the] Lender's successors and assigns." The deed of trust encumbers the Ortegas' real property in Everett, Washington. The deed was recorded with the Snohomish County Auditor on November 14, 2007.

On November 15, 2007, Golf transferred the loan to Wells Fargo Home Mortgage, Inc. (Wells Fargo). Golf sent Wells Fargo a funding transmittal, which Wells Fargo uses when it purchases a loan originated by a third party. Golf indorsed the Ortegas' promissory note over to Wells Fargo Bank, N.A. The note stated, "Without recourse, pay to the order of Wells Fargo Bank, N.A." and was signed by Golf's corporate officer. Wells Fargo received and signed the note. Wells Fargo stored the original note in its offices in Des Moines, Iowa. The Ortegas never made payments to Golf. Instead, they were directed to make payments to Wells Fargo.

On May 17, 2009, Wells Fargo sent the Ortegas a letter notifying them that their loan was in default, because they had fallen $11,582 behind on payments. They needed to pay 17,251 to cure the default. Wells Fargo warned them that if they did not cure the default by June 16, 2009, "a foreclosure action . . . may be initiated."

In July 2009, Northwest Trustee Services, Inc. (NWTS) received a nonjudicial foreclosure referral from Wells Fargo. The referral directed NWTS to foreclose on the

Ortegas' property in the name of Wells Fargo's agent, HSBC Bank USA, N.A. (HSBC).[1]

On July 21, 2009, NWTS executed a notice of default as the duly authorized agent of HSBC. The notice informed the Ortegas that they needed to pay $32,168 to cure default, otherwise NWTS would record notice of sale.

On August 28, 2009, NWTS received a beneficiary declaration from HSBC. It was signed by Wells Fargo's attorney in fact and declared, under penalty of perjury, that "HSBC Bank as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Asset-Backed Pass-Through Certificates Series 2008-1 is the actual holder of the promissory note . . . ."

On September 16, 2009, MERS assigned the Ortegas' deed of trust to HSBC. This assignment of deed of trust was recorded a day later with the Snohomish County Auditor. Around the same time, Wells Fargo, as attorney in fact for HSBC, executed an appointment of successor trustee naming NWTS as the successor trustee under the deed of trust.

NWTS recorded notice of the trustee's sale on September 22, 2009, setting the date of sale for December 28, 2009.

---

[1] HSBC is Trustee for Wells Fargo Asset Securities Corporation, Mortgage Asset Back Pass-Through Certificate Series 2008-1 (the Wells Fargo Trust). Mortgage pass-through securities are a form of mortgage-backed securities. Cashmere Valley Bank v. Dept. of Revenue, 175 Wn. App. 403, 411, 305 P.3d 1123 (2013), review granted on other grounds, ___ Wn.2d ___, ___ P.3d ___ (2014). They are represented by share certificates that grant the certificate holder a proportionate interest in a pool of mortgages held in trust. Id. The certificate holder receives cash flow from the underlying mortgages as borrowers make their principal and interest payments to the holding trust. Id. That is, the trust passes the proportionate interest in the underlying payments to the certificate holder. Id. The return an investor in this security receives thus mirrors the payments borrowers make on the mortgages in the pool. Id. Wells Fargo Home Mortgage is attorney in fact for HSBC. It is also the loan servicer for the Wells Fargo Trust, billing and processing the mortgage payments for the Trust. See id.

On December 17, 2009, the Ortegas filed a complaint to restrain or set aside the nonjudicial foreclosure proceedings. The Ortegas named NWTS, MERS, Golf, HSBC, Wells Fargo, and Keyna and Mike Willet[2] as defendants. On January 20, 2010, the Ortegas moved to quash the trustee's "invalid, unauthorized foreclosure proceedings."

On January 29, 2010, the trial court stayed the trustee's sale until March 30, 2010. As a condition of the stay, the court ordered the Ortegas to deposit $5,669 monthly payments into the court registry—the monthly amount they owed under the loan. If they failed to do so, the court explained, "the trustee sale may go forward with permission of the court and only after notice is given to the" Ortegas.

Ultimately, no sale of the Ortegas' home occurred within the statutory 120 day timeframe. RCW 61.24.040(6). Prior to oral argument, no other trustee's sale was scheduled.

On February 15, 2010, the Ortegas served discovery requests on the defendants. On March 17, 2010, the parties agreed to a 60 day continuance of all deadlines, including discovery deadlines. On July 19, 2010, the Ortegas moved to continue the stay and postpone NWTS's summary judgment motion until the parties completed loan modification discussions and discovery. Two months later, NWTS, Wells Fargo, HSBC, and MERS moved for summary judgment. On October 28, 2010, the Ortegas agreed to wait until the trial court ruled on the pending summary judgment motions before requiring the defendants to respond to discovery requests.

In a November 10, 2010 letter to the parties, the trial court granted another 90 day continuance per the Ortegas' CR 56(f) motion. The court encouraged the parties to

---

[2] The Ortegas alleged that Keyna Willet induced them to apply for the loan.

complete discovery and finalize a loan modification agreement during the interim.[3] The court also noted that Wells Fargo had not yet produced the original promissory note at issue.

On January 25, 2011, the trial court granted Wells Fargo's GR 20(a) motion[4] to introduce the original "wet ink" note associated with the Ortegas' deed of trust, then withdraw it and replace it with a copy. The court ordered Wells Fargo to first make the note available for inspection by the Ortegas' expert before producing it for inspection by the court. Wells Fargo complied and a true and correct copy of the original note appears in the record.

The following month, all the defendants renewed their summary judgment motions. Wells Fargo requested that, at a minimum, the court require the Ortegas to resume their monthly mortgage payments into the court registry. By that time, the Ortegas had not made payments for almost a year.

On March 14, 2011, the Ortegas moved to compel the defendants to supplement their answers to discovery. Alternatively, the Ortegas asked the court to stay summary judgment until the Washington Supreme Court's decision in Bain v. Metropolitan Mortgage Group, Inc., 175 Wn.2d 83, 285 P.3d 34 (2012).

In a March 25, 2011 letter to the parties, the trial court granted the Ortegas' motion to compel discovery. The court again stayed the case pending completion of discovery. The court also ordered the Ortegas to resume making their monthly

---

[3] Wells Fargo offered the Ortegas two loan modifications during the stay, but they refused both.
[4] GR 20(a) allows a party to petition for admission of a negotiable instrument as an exhibit and then withdraw the original by substituting it with a copy.

mortgage payments into the court registry. The court set the Ortegas' monthly payment at $5,669, per its original January 29, 2010 order.

Between March 25 and December 15, 2011, the Ortegas made only four payments into the court registry: $2,432 on April 26; $5,669 on May 26; $3,237 on June 16; and $5,669 on June 28. They did not make any payments after June 28, 2011.

On October 11, 2011, the defendants moved for the trial court to declare the Ortegas in contempt of its March 25, 2011 order. In response, the Ortegas moved to shorten time and counter moved for contempt and to compel discovery.

The trial court held a hearing on November 16, 2011 to consider the parties' various motions. Wells Fargo confirmed that the Ortegas' expert inspected the wet ink note memorializing the loan. The Ortegas told that court that they were unable to make the specified payments into the court registry. They requested that the court reduce their monthly payments. The court asked the Ortegas to provide legal support for its authority to remake the contract and lower their payments. The Ortegas could cite none.

The trial court found the Ortegas in contempt for failure to pay. The court gave them 60 days to purge their contempt by paying the amount owed. The trial court further warned the Ortegas that it would dismiss their case if they failed to purge their contempt. The court also denied the Ortegas' motion to shorten time, as well as their cross motions for contempt and discovery.

On December 20, 2011, the trial court issued its written order finding the Ortegas in contempt of the March 25, 2011 order. The court explained that it previously ordered the Ortegas to resume making monthly payments into the court registry. The Ortegas

made four payments, but had not made any payment since June 28, 2011. The court ordered:

> On or before January 16, 2012, the Ortegas may purge their contempt by (a) paying into the court registry the current $22,676.72 arrearage; and (b) remaining current on their monthly $5,669.18 obligation. Failure to so purge their contempt shall result in the Court striking the Ortegas' pleadings and dismissing this lawsuit.

The Ortegas did not purge their contempt. On March 13, 2012, the defendants moved to dismiss the Ortegas' claims on that basis. A day later, the Ortegas filed a CR 41(a)(1)(B) motion to voluntarily dismiss without prejudice. In response, the defendants requested that the trial court dismiss with prejudice:

> If successful, the Ortegas' attempt to dismiss this case without prejudice will undermine the Court's December 15, 2011 Order declaring them in contempt. The Ortegas will no longer be required to make payments into the Court registry and will resume living in the subject property without making any payments whatsoever. If Defendants elect to resume the foreclosure of the property, the Ortegas will simply re-file this lawsuit without fear of the Court's previous orders requiring monthly payments or declaring them in contempt.

(Footnote omitted.) Alternatively, the defendants requested that the court require the Ortegas to purge their contempt before re-filing the lawsuit.

On March 26, 2012, the parties appeared before the court on their cross motions to dismiss. Questions arose as to which party was the proper one to receive disbursement of funds held in the court registry. The Ortegas' position was that the only correct party to receive the funds would be the statutory holder of the note or that entity's proper designee. The Ortegas observed that if the trial court concluded that MERS was the holder, then it would be subject to the Washington Supreme Court's pending decision in Bain. The defendants did not disagree. Because Bain possibly

impacted the outcome of case, the trial court granted a stay of the proceedings on March 29, 2012.

The Washington Supreme Court decided Bain on August 16, 2012. 175 Wn.2d 83. The Bain court held that only the actual holder of the promissory note may be a beneficiary with the power to appoint a trustee to carry out a nonjudicial foreclosure. Id. at 89. Simply put, if MERS does not hold the note, it is not a lawful beneficiary. Id.

On October 26, 2012, the defendants renewed their motion to dismiss the Ortegas' complaint with prejudice for contempt of a court order. The defendants also moved to disburse funds held in the court registry to Wells Fargo. Also on October 26, 2012, the Ortegas moved to vacate the contempt order under CR 60(b)(11), allow them to withdraw their prior counter motion to dismiss, and order a refund of their money.

On November 5, 2012, the trial court granted the defendants' motion to dismiss the Ortegas' complaint for contempt. The court dismissed the matter in its entirety with prejudice. The trial court further granted the defendants' motion to disburse funds held in the court registry. The court directed the funds to be released to Wells Fargo and applied against the Ortegas' past due loan balance. Finally, the trial court denied the Ortegas' motions to vacate the contempt finding, allow withdrawal of their counter motion, and order a return of their funds.

The Ortegas appeal from this November 5 order.

From the time the Ortegas moved to stay the trustee's sale in December 2009 to the trial court's dismissal in November 2012, the Ortegas paid only $28,346 into the court registry. They were $85,038 behind on court registry payments and had not paid into the registry for over a year.

DISCUSSION

The Ortegas assert that de novo review applies, because the trial court dismissed with prejudice. They rely on <u>Vintage Construction Company, Inc. v. City of Bothell</u>, 83 Wn. App. 605, 922 P.2d 828 (1996), <u>aff'd</u>, 135 Wn.2d 833, 959 P.2d 1090 (1998). However, that case is inapposite, because there the trial court dismissed with prejudice based on granting summary judgment. <u>Id.</u> at 608-09. Dismissal here did not involve summary judgment.

Instead, the applicable standard of review for all issues here is abuse of discretion. <u>See, e.g.</u>, <u>In re Pers. Restraint of King</u>, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988) (whether contempt is warranted); <u>see also</u> <u>Lindblad v. Boeing Co.</u>, 108 Wn. App. 198, 207, 31 P.3d 1 (2001) (trial court's ruling on a discovery motion); <u>Summers v. Dep't of Revenue</u>, 104 Wn. App. 87, 89, 14 P.3d 902 (2001) (denial of motion to vacate); <u>Woodhead v. Discount Waterbeds, Inc.</u>, 78 Wn. App. 125, 130-31, 133, 896 P.2d 66 (1995) (dismissal for noncompliance with a court order); <u>Wilson v. Henkle</u>, 45 Wn. App. 162, 169, 724 P.2d 1069 (1986) (disbursing funds in the court registry). A trial court abuses its discretion when it is exercised on untenable grounds or for untenable reasons. <u>Morin v. Burris</u>, 160 Wn.2d 745, 753, 161 P.3d 956 (2007).

The Ortegas have been pro se for much of this lawsuit. The law does not distinguish between those who elect to conduct their own legal affairs and those who seek assistance of counsel—both are subject to the same procedural and substantive laws. <u>In re Marriage of Olson</u>, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). An appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."

RAP 10.3(a)(6). We need not consider arguments unsupported by any citation to authority or reference to the record. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

I.   Refusal to Vacate Contempt Order and Disbursal of Funds to Wells Fargo

The Ortegas challenge the trial court's order denying their motion to vacate the contempt order and granting the defendants' motion to disburse funds in the court registry. Their argument is essentially that the defendants lacked legal authority to bring the foreclosure action. They assert that neither MERS nor Wells Fargo were holders of the promissory note and were therefore not proper beneficiaries under the deed of trust. If improper beneficiaries, they could not appoint NWTS as a successor trustee to carry out the nonjudicial foreclosure sale.

Below, the Ortegas asked the trial court to vacate the finding of contempt and order a return of their funds under CR 60(b)(11). CR 60(b)(11) allows relief for "[a]ny other reason justifying relief from the operation of the judgment." It is reserved for extraordinary circumstances not covered by any other section of CR 60(b). In re Marriage of Flannagan, 42 Wn. App. 214, 221, 709 P.2d 1247 (1985). Such circumstances must relate to irregularities extraneous to the court's action or questions concerning the regularity of the court's proceedings. Id.

Under the Washington deed of trust act, the term "beneficiary" is defined as the "holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2). Only a proper beneficiary has the power to appoint a successor to the original trustee named in the deed of trust. Bavand v. OneWest Bank, F.S.B., 176 Wn. App.475, 486, 309 P.3d 636 (2013). Only a properly appointed trustee

may proceed with a nonjudicial foreclosure of real property. Id. Thus, when an unlawful beneficiary appoints a successor trustee, that trustee lacks legal authority to carry out the foreclosure. Walker v. Quality Loan Service Corp., 176 Wn. App.294, 306, 308 P.3d 716 (2013).

Traditionally, the beneficiary of a deed of trust is the lender who loaned money to the homeowner. Bain, 175 Wn.2d at 88. The deed of trust protects the lender by giving it the power to nominate a trustee, who then has the power to sell the home if the homeowner defaults. Id. Lenders, however, are free to sell the secured debt, typically by selling the promissory note signed by the homeowner. Id. The deed of trust act recognizes that the beneficiary of a deed of trust at any one time might not be the original lender. Id. The act therefore gives subsequent holders of the debt the benefit of the act by defining "beneficiary" broadly. Id.; RCW 61.24.005(2).

In Bain, Kevin Selkowitz and Kristin Bain each bought homes in King County. 175 Wn.2d at 89. Both their deeds of trust named MERS as the beneficiary and nominee for the lender. Id. Selkowitz and Bain eventually fell behind on their mortgage payments. Id. at 89-90. MERS, in its role as beneficiary of the deeds of trust, named successor trustees in both cases. Id. at 90. When the trustees began foreclosure proceedings, both Selkowitz and Bain sought injunctions. Id.

The Washington Supreme Court was asked to decide whether MERS is a lawful beneficiary with the power to appoint trustees if it does not hold the promissory note secured by the deed of trust. Id. at 91. MERS maintains a private electronic registration system for tracking ownership of mortgage-related debt. Id. at 88. In many states, including Washington, MERS is also often listed as the beneficiary of a deed of

11

trust.[5] Id. The MERS system changed the traditional three-party deed of trust into a four-party deed of trust, in which MERS acts as the contractually agreed upon beneficiary for the lender and its successors and assigns. Id. at 96. One of the criticisms of MERS is that it makes it difficult, if not impossible, to identify the current holder of a particular loan. Id. at 97. This has given rise to much litigation and concern about possible errors in foreclosures, misrepresentations, and fraud. Id.

The Bain court concluded that if MERS does not hold the promissory note, then it is not a lawful beneficiary under the plain language of RCW 61.24.005(2). Id. at 98-99. In other words, only the actual holder of the note is a lawful beneficiary with power to appoint a successor trustee. See id. at 101. The Bain court found support for this conclusion in the legislative history of the 1998 amendments to the deed of trust act, as well as certain provisions of the Uniform Commercial Code (UCC), title 62A RCW. Id. at 101-04. For instance, the UCC specifies that the holder of a negotiable instrument "'means the person in possession if the instrument is payable to bearer.'" Id. at 103-04 (quoting former RCW 62A.1-201(20) (2001)). Thus, the Bain court explained, if the original lender sold the loan, the "purchaser would need to establish ownership of that loan, either by demonstrating that it actually held the promissory note or by documenting the chain of transactions." Id. at 111 (emphasis added). MERS conveying its "interests" does not accomplish this. Id.

---

[5] The initial MERS mortgage is recorded in the county clerk's office with MERS named as the lender's nominee or mortgagee of record on the instrument. Bain, 175 Wn.2d at at 95. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members (MERS assignments), but these assignments are not publicly recorded. Id. Instead, they are tracked electronically in MERS's private system. Id.

The MERS issue is not present here. Wells Fargo demonstrated that it actually holds the Ortegas' original promissory note securing the deed of trust. Days after the Ortegas' loan closed, Wells Fargo purchased the loan from Golf. Golf indorsed the note over to Wells Fargo, making it payable to the order of Wells Fargo Bank, N.A. Wells Fargo then signed the note. In a declaration, Wells Fargo warranted that the original, wet ink note was stored at its offices in Des Moines, Iowa. And, in its beneficiary declaration, Wells Fargo stated, under penalty of perjury, that it was the actual holder the promissory note.[6] The trial court granted Wells Fargo's GR 20(a) motion to introduce the original wet ink note into the record, then withdraw and replace it with a copy. Wells Fargo complied with the rule and a true and correct copy of the original note appears in the record. The Ortegas' expert also had an opportunity to inspect the note.[7]

The Ortegas are correct that MERS is an improper beneficiary. However, MERS's designation as beneficiary does not void the entire deed of trust. As the actual holder of the note, Wells Fargo has authority to enforce the note under Bain, regardless

---

[6] The Ortegas take issue with HSBC acting as Wells Fargo's agent in holding the note and appointing NWTS as successor trustee. However, a holder can possess a note "directly or through an agent." RCWA 62A.3-201 cmt. 1. The Bain court also acknowledged that the deed of trust act approves the use of agents. 175 Wn.2d at 106. MERS is not a proper agent, because its principal is unidentifiable. Id. at 107. Here, in contrast, Well Fargo is clearly the principal in control of its agent, HSBC. HSBC's agency is permissible under Bain.

[7] The Ortegas cited this court's recent opinion in Bavand to argue that these facts do not establish possession of the note. There, OneWest Bank claimed to be the present beneficiary of the deed of trust and appointed a successor trustee. Bavand, 176 Wn. App. at 482. However, the record contained only a document certified to be a true and correct copy of the original note. Id. at 498. No declaration or affidavit explained more. Id. The court concluded that possession of a copy of the original note did not establish possession of the original note. Id. The facts here are distinguishable, because Wells Fargo established actual possession of the original note.

13

of MERS's identification in the deed of trust. Wells Fargo is the proper beneficiary to appoint a successor trustee to conduct a nonjudicial foreclosure sale. As Wells Fargo's appointed trustee, NWTS could properly carry out the sale.

This was the same factual scenario presented in Florez v. OneWest Bank, F.S.B., No. C11-2088-JCC, 2012 WL 1118179 (W.D. Wash. Apr. 3, 2012). There, the plaintiffs borrowed money to buy residential property pursuant to a promissory note secured by a deed of trust. Id. at *1. MERS was named as beneficiary and nominee for the lender. Id. When the plaintiffs defaulted, NWTS issued and recorded a notice of trustee's sale, acting at the direction of the holder of the note, OneWest Bank. Id. The plaintiffs argued that any assignment made by MERS was invalid, because it is not a legitimate beneficiary. Id. The court distinguished these facts from Bain:

> In Bain, the alleged authority to foreclose was based solely on MERS's assignment of the deed of trust, rather than on possession of the Note. Here, however, the undisputed facts establish that OneWest had authority to foreclose, independent of MERS, since OneWest held Plaintiffs' Note at the time of foreclosure.

Id. Therefore, the court dismissed the plaintiffs' claims for wrongful foreclosure, infliction of emotional distress, violation of the Washington Consumer Protection Act (ch 19.86 RCW), and fraudulent misrepresentation. Id. at *1, *2.

We hold that Wells Fargo is a lawful beneficiary of the deed of trust, because it held the Ortegas' original note at the time of foreclosure. Wells Fargo therefore had authority to appoint NWTS as a successor trustee, who then had authority to conduct the trustee's sale. Given the fact that Wells Fargo produced the original wet ink note, allowing for a straightforward application of Bain, there are no extraordinary circumstances justifying relief from the contempt order under CR 60(b)(11). The trial

court acted within its discretion in denying the motion to vacate contempt and disbursing funds to Wells Fargo as holder of the note.[8]

## II. Ortegas' Present Ability to Pay

The Ortegas argue that the trial court's contempt order must fail, because the court did not make a required finding that they had the present ability to pay. They also point to RCW 7.24.190, which states:

> The court, in its discretion and upon such conditions and with or without such bond or other security as it deems necessary and proper, may stay any ruling, order, or any court proceedings prior to final judgment or decree and may restrain all parties involved in order to secure the benefits and preserve and protect the rights of all parties to the court proceedings.

The Ortegas argue that, because this provision gives the court authority to stay proceedings without a bond or other security, the court here did not need to require them to make payments into the court registry.

However, the Ortegas ignore the express language of the deed of trust act. Our primary duty in construing a statute is to ascertain and carry out the legislature's intent. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Statutory interpretation begins with the statute's plain meaning. Id.

RCW 61.24.130(1) provides:

> The court shall require as a condition of granting the restraining order or injunction that the applicant pay to the clerk of the court the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not being foreclosed.

---

[8] The Ortegas argue that the trial court needed to make a finding of Wells Fargo's holder status before disbursing funds. They cite no authority for this assertion. Regardless, overwhelming evidence in the record supports the conclusion that Wells Fargo was the actual holder of the note.

(Emphasis added.) This language is mandatory. In order to restrain a trustee's sale, the trial court must require the homeowner to pay the sums due under the loan. This language contrasts with permissive language later in the same provision: "In addition, the court may condition granting the restraining order or injunction upon the giving of security by the applicant, in such form and amount as the court deems proper, for the payment of such costs and damages, including attorneys' fees." RCW 61.24.130(1)(b) (emphasis added). The trial court has discretion to require security for attorney fees under RCW 61.24.130(1)(b). It has no such discretion in requiring payments to restrain a trustee's sale. RCW 61.24.130(1).

Moreover, RCW 61.24.130(1) neither allows nor requires the trial court to make a finding of the applicant's ability to pay. Given that a property in dispute is in foreclosure by the time RCW 61.24.130 comes into play, an applicant often might not have the ability to pay. This was a choice made by the legislature in balancing the interests of the borrower and the lender. We will not substitute our judgment for that of the legislature by reading a new requirement into the statute. State v. Larkins, 79 Wn.2d 392, 394, 486 P.2d 95 (1971). Furthermore, where two statutes apply, the specific statute supersedes the more general statute. Gen. Tel. Co. of the Nw., Inc. v. Utils. & Transp. Comm'n, 104 Wn.2d 460, 464, 706 P.2d 625 (1985). RCW 61.24.130(1) is more specific than RCW 7.24.190 in the context of nonjudicial foreclosures and therefore controls in this case.

Here, the trial court followed RCW 61.24.130(1) to the letter by requiring the Ortegas to make their monthly payments into the court registry as a condition of

16

restraining the trustee's sale.[9] The court warned them that the sale would go forward if they failed to pay. Nevertheless, the Ortegas made only two payments between January 2009 and March 2011. On March 25, 2011, the court ordered the Ortegas to resume making monthly payments into the court registry. They did not comply with this order. Instead, they made only four payments between March and June 2011, and no payments after that time. In November 2011, the trial court found them in contempt of its March 25 order to make payments. The court gave them 60 days to purge their contempt or face dismissal of their case. For almost a year, the Ortegas again failed to make any payments or purge their contempt. The trial court finally dismissed their action with prejudice on November 5, 2012—nearly three years after the trial court initially restrained the trustee's sale.

We hold that the trial court did not err in finding the Ortegas in contempt of its order to make payments into the court registry, as required by RCW 61.24.130(1).[10] Even if the Ortegas had demonstrated that they lacked the ability to pay and contempt based on nonpayment should be vacated, the trial court did not err in dismissing the

---

[9] The Ortegas argue that this stay order was conditional. They misunderstand the nature of the condition. The stay was conditional in the sense that if they failed to make payments into the court registry as required under RCW 61.24.130(1), then the trustee's sale could resume. The stay was not conditional in the sense that the trial court did not need to require them to make monthly payments. And, the trial court did not find the Ortegas in contempt of this stay order, as they claim. It found them in contempt of its later March 25, 2011 order to make payments.

[10] The Ortegas provide no persuasive authority for their argument that the trial court's contempt order became punitive and violated due process when they could not purge their contempt. In the case the Ortegas cite for this proposition, the defendants were imprisoned for failure to purge contempt. Britannia Holdings Ltd. v. Greer, 127 Wn. App. 926, 930, 113 P.3d 1041 (2005). The Ortegas' case is not comparable. Rather, dismissal here was a coercive sanction within the sound discretion of the trial court. Yamaha Motor Corp. v. Harris, 29 Wn. App. 859, 866, 631 P.2d 423 (1981); see also Woodhead, 78 Wn. App. at 129.

case. The statute requires payments as a condition of staying the sale. The Ortegas were not entitled to an injunction of the sale to assert their claims without compliance with the statute.

III.    Motion to Compel Discovery

In its December 15, 2011 order, the trial court granted the defendants' motion for contempt and denied the Ortegas' counter motion to compel discovery. The Ortegas now contend that the trial court erred in denying discovery, because there were no facts in the record establishing the note's chain of custody. However, the trial court acted within its sound discretion in denying the discovery motion. Clarke v. Office of the Attorney Gen., 133 Wn. App. 767, 777, 138 P.3d 144 (2006). Wells Fargo produced the original indorsed note in its possession. That note established that Wells Fargo was a statutory beneficiary for purposes of foreclosure on the deed of trust. Per Bain, the Ortegas did not need chain of custody evidence once Wells Fargo did so. And, in considering the Ortegas' motion to compel, the trial court noted "that probably in this case [the defendants] have had to produce more documentation than they had to anywhere else. So you have gotten what you asked for when you came here." Given that the defendants had already produced the original note, the trial court did not abuse its discretion in denying the Ortegas' motion to compel.

IV.    Right to Trial

The Ortegas assert that the trial court erred by depriving them of their right to a trial. They argue, without citation, that they "had a reasonable expectation that their legal issues would be thoughtfully considered by the Court." They then proceed to list

18

legal and factual issues raised in their complaint. They cite no other legal authority for this argument.

Contrary to the Ortegas' assertion, there is no absolute right to a trial for civil causes of action. State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n, 111 Wn. App. 586, 609, 49 P.3d 894 (2002). Moreover, trial courts have authority to dismiss an action with prejudice for noncompliance with a court order. Woodhead, 78 Wn. App. at 129-30. Here, the trial court gave the Ortegas an opportunity to purge their contempt. The court warned them that failure to purge would result in dismissal of their case. After nearly a year of noncompliance of this express order, the trial court acted within its discretion in dismissing the case with prejudice. It did not violate the Ortegas' right to a trial under the circumstances.

We affirm.

WE CONCUR: