[No. 2802-1. Division One. July 21, 1975.]

VIRGINIA BURGESS, *Appellant*, v. VERNON W. TOWNE *et al*, *Respondents*.

*Paul J. Fisher,* for appellant.

*John P. Harris, Corporation Counsel,* and *J. Roger Nowell, Assistant,* for respondents.

CALLOW, J.—This is an action brought by a traffic court defendant, as plaintiff, claiming false imprisonment against the municipal court judge. Summary judgment was entered in favor of the defendant municipal judge, and the plaintiff appeals.

The plaintiff, Virginia Burgess, alleged that in September 1973, she appeared before Judge Vernon W. Towne in Seattle Municipal Court charged with two traffic offenses. She stated that following the presentation of testimony, and while the court was summarizing the case orally, the judge said "I know you are guilty." The plaintiff states that upon hearing this statement she responded "What do you mean?" and the judge responded "I know you are guilty." The plaintiff alleges she then asked the judge how he knew she was guilty, whereupon he became angry and ordered her to be detained. She states that she was then removed from the courtroom and placed in an adjoining small room. She alleges she was detained there from 9:25 a.m. until 10:10 a.m., when she was returned to the courtroom and ordered to sit in the jury box until 11:55 a.m. The judge then found her guilty and imposed a fine.

The allegations of the defendant-judge vary from the position of the plaintiff. The defendant-judge asserts that after hearing the testimony he inquired of the defendant (plaintiff herein) if she wished to say anything more. He states he then began summarizing the facts, whereupon the defendant became loud, angry and insulting, and would not allow him to continue. The judge states that he asked her to sit down and said he would talk to her further after the remaining cases on the calendar had been heard. The defendant-judge alleges she refused to be seated and continued her loud speech and insulting language. He states she was creating a disturbance in the courtroom and so he asked the bailiff to have her sit outside the courtroom in the clerk's office until he could talk with her. It is his position that he then continued her case to the end of the calendar in order to be able to conclude it in an orderly fashion.

■ The defendant claimed the defense of judicial immunity and moved for judgment on the pleadings, which was treated as a motion for summary judgment. CR 12(c); CR 56. We are called upon to review whether summary judgment should have been granted in the light of the evidence presented. Summary judgment having been entered for the defendant, the evidence must be viewed in the light most favorable to the plaintiff. CR 56; *Mason v. Bitton*, 85 Wn.2d 321, 534 P.2d 1360 (1975); *Clarke v. Alstores Realty Corp.*, 11 Wn. App. 942, 527 P.2d 698 (1974).

The issue is whether the Superior Court erred in granting summary judgment on the ground that the defendant-judge was protected by judicial immunity. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 351-52, 20 L. Ed. 646, 649, 651 (1871) sets forth the principles of judicial immunity as follows:

> The principle, therefore, which exempts judges of courts . . . from liability . . . for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well-ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country. . . .
>
> . . .
>
> . . . A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, . . .

*Pierson v. Ray*, 386 U.S. 547, 553-54, 18 L. Ed. 2d 288, 294, 87 S. Ct. 1213 (1967), stated:

> Few doctrines were more solidly established at common law than the immunity of judges from liability for dam-

ages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in *Bradley* v. *Fisher*, 13 Wall. 335 (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." (*Scott v. Stansfield*, L. R. 3 Ex. 220, 223 (1868), quoted in *Bradley* v. *Fisher, supra*, 349, note, at 350.) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors maybe corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

Likewise, *Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir. 1974), presented the rule thusly:

A seemingly impregnable fortress in American Jurisprudence is the absolute immunity of judges from civil liability for acts done by them within their judicial jurisdiction. Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The general rule, laid down over a century ago, is that judges are immune from suit for judicial acts within and even in excess of their jurisdiction even if those acts were done maliciously or corruptly; the only exception to this sweeping cloak of immunity exists for acts done in "the clear absence of all jurisdiction."

Judges may invoke the doctrine not merely in their defense at trial, but rather as a plea to bar the trial itself. This is justified, said Judge Learned Hand, because "to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949). If the essence of Judge Thompson's conduct is protected by immunity, therefore, it remains protected even if the plaintiff alleged that Thompson used manifestly excessive force. Any other rule

would place a judge at the mercy of a pleader's allegations.

(Footnotes omitted.) *See also Cuiksa v. Mansfield,* 250 F.2d 700 (6th Cir. 1957); *Ryan v. Scoggin,* 245 F.2d 54 (10th Cir. 1957); *Francis v. Crafts,* 203 F.2d 809 (1st Cir. 1953); 46 Am. Jur. 2d *Judges* §§ 72-83 (1969); 32 Am. Jur. 2d *False Imprisonment* § 56 (1967).[1]

■ In determining whether the actions of the defendant-judge subjected him to civil suit, the inquiry must be whether he acted in "clear absence of all jurisdiction," not whether he acted in excess of his jurisdiction. Jurisdiction, for purposes of judicial immunity, should be construed broadly so that a judge will not be subject to possible liability unless he acts without color of authority. *Apton v. Wilson,* 506 F.2d 83, 90 (D.C. Cir. 1974). If a judge has jurisdiction over the subject matter and person and in exercising this jurisdiction performs a judicial act, he is immune from civil suit even if he acts maliciously or corruptly. *Cadena v. Perasso,* 498 F.2d 383 (9th Cir. 1974); *Jacobson v. Schaefer,* 441 F.2d 127 (7th Cir. 1971); *Sullivan v. Kelleher,* 405 F.2d 486 (1st Cir. 1968); *Sires v. Cole,* 320 F.2d 877 (9th Cir. 1963); *Wade v. Bethesda Hosp.,* 337 F. Supp. 671 (S.D. Ohio 1971); *Huendling v. Jensen,* 168 N.W.2d 745 (Iowa 1969). Correction of the problem of the malicious or corrupt judge must come about by means other than civil suit. This doctrine applies to justices of the peace, as well as to courts of general jurisdiction. *Duba v. McIntyre,* 501 F.2d 590 (8th Cir. 1974); *Gregory v. Thompson, supra; Huendling v. Jensen, supra;* 46 Am. Jur. *Judges* § 74 (1969); 35 C.J.S. *False Imprisonment* § 44 (1960).

Although the doctrine of judicial immunity is a broad one, not all actions by judges are immune from civil suit. In *Spires v. Bottorff,* 317 F.2d 273 (7th Cir. 1963), *cert. denied,* 379 U.S. 938, 13 L. Ed. 2d 349, 85 S. Ct. 343 (1964), a judge who interfered with judicial proceedings after he had dis-

---

[1]For criticism of the doctrine of judicial immunity, *see* Comment, *Liability of Judicial Officers Under Section 1983,* 79 Yale L.J. 322 (1969).

qualified himself was held to be acting in clear absence of jurisdiction. Likewise, *Yates v. Village of Hoffman Estates*, 209 F. Supp. 757 (N.D. Ill. 1962), held that it was not a judicial function for a magistrate to direct a police officer to take into custody a person not named in a warrant, and *Wade v. Bethesda Hosp., supra*, held that a judge acted without jurisdiction in ordering a person sterilized. The opinion previously quoted, *Gregory v. Thompson, supra*, involved a trial judge who personally evicted a person from his courtroom and was held not to be performing a judicial act in doing so, and therefore not immune from civil suit. In each of these cases there existed a clear absence of jurisdiction and the actions were not subject to dismissal upon summary judgment. *See also* 48 C.J.S. *Judges* §§ 62-64 (1947).

The cause before us presents different circumstances. Here the plaintiff was appearing in traffic court on two traffic offenses. The municipal judge had jurisdiction over the person of the plaintiff and the subject matter. The plaintiff contends, however, that the order to have her detained was not a judicial act because the judge was not exercising his contempt power under RCW 3.28.010, or his inherent power to punish for contempt. *See State ex rel. Dysart v. Cameron*, 140 Wash. 101, 248 P. 408, 54 A.L.R. 311 (1926). The defendant agrees that he was not exercising his contempt powers, but instead contends that he acted under his general power to control the conduct of the proceedings before him. RCW 2.28.010 provides:

> Every court of justice has power—(1) To preserve and enforce order in its immediate presence. (2) To enforce order in the proceedings before it, or before a person or body empowered to conduct a judicial investigation under its authority. (3) To provide for the orderly conduct of proceedings before it or its officers. (4) To compel obedience to its judgments, decrees, orders and process, and to the orders of a judge out of court, in an action, suit or proceeding pending therein. (5) To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected

with a judicial proceeding before it, in every matter appertaining thereto.[2]

■ The manner of maintaining order in the courtroom is within the trial judge's sound discretion and will depend upon the type of disruption before him. Under RCW 2.28.020, the trial court may utilize its contempt powers to preserve order. However, other means are also available to it depending upon the circumstances. It has the power to continue a particular case and set it at the end of the calendar, and to take reasonable measures to insure that the proper decorum and order is maintained in the courtroom. *See McAlester v. Brown*, 469 F.2d 1280 (5th Cir. 1972); *Mullins v. Oakley*, 437 F.2d 1217 (4th Cir. 1971). See also section 4.1(c) of the American Bar Association Standards Relating to the Function of the Trial Judge (Approved Draft 1972). In *Illinois v. Allen*, 397 U.S. 337, 343, 25 L. Ed. 2d 353, 359, 90 S. Ct. 1057 (1970), we find:

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations.

The least severe remedy that will accomplish the needed result is preferable. See section 6.3 of the American Bar Association Standards Relating to the Function of the Trial Judge (Approved Draft 1972).

The acts alleged to have been committed by the trial judge, taken in the light most favorable to the plaintiff, were not acts performed in the clear absence of jurisdic-

---

²The defendant-judge was vested with these powers under RCW 35.20.250, which provides in part:

"The municipal court shall have concurrent jurisdiction with the superior court and justices of the peace in all civil and criminal matters as now provided by law for justices of the peace, . . .

tion. Entry of a summary judgment was proper under the evidence.

Affirmed.

JAMES and SWANSON, JJ., concur.