[No. 20919–1–I.  Division One.  March 13, 1989.]

THOMAS J. LAYNE, ET AL, *Appellants,* v. FREDERICK W. HYDE, JR., ET AL, *Respondents.*

*Richard Glein,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Francois L. Fischer, Assistant,* for respondents Hyde, et al.

*Linda Foreman* and *Lee, Smart, Cook, Martin & Patterson,* for respondents Standal.

*William F. Lemke III* and *William L. Britton* on behalf of Washington Administrative Law Judges Association, amici curiae for respondents.

REVELLE, J.*—Thomas J. Layne and Francine B. Layne, individually and doing business as Downtown Mini Warehouse (hereinafter referred to as the Laynes), appeal a summary judgment dismissing their claims and awarding attorney's fees and costs to the respondents.

---

*Judge George H. Revelle is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

The Laynes are the owners of Downtown Mini Warehouse. Dawn Marie LaBox (LaBox), formerly known as Donald Eugene LaBox, was employed by the business. After LaBox indicated a desire to be known as a woman, there was a series of incidents at work which culminated in termination of her employment.

In September of 1985, LaBox made a claim for benefits with the Department of Employment Security, which was denied. LaBox then retained attorney Barbara Standal to represent her in the appeal. At the hearing, the Laynes appeared pro se and Standal represented LaBox.

In January of 1986, Administrative Law Judge (ALJ) Hyde issued his opinion in favor of LaBox, reversing the Department's denial of benefits. The Laynes were upset with the decision and began an investigation into the background of ALJ Hyde, the Office of Administrative Hearings (OAH), Standal, and others. They petitioned the OAH to remand or dismiss Hyde's decision. The Commissioner remanded the appeal for a de novo hearing. The results of that hearing are not the subject of this appeal.

In July of 1986, the Laynes filed a summons and complaint in this case. The complaint alleged conspiracy to deprive the Laynes' civil rights, abuse of process, outrage, and negligence based on a theory that Hyde, LaBox, and Standal had conspired to deprive the Laynes of a fair employment security hearing. The action against the State was based on a negligence theory of inadequate supervision and nonpromulgation of rules. After the Laynes conducted and received discovery pertaining to various aspects of the lives of the defendants, they filed a second amended complaint which added a claim that ALJ Hyde had no jurisdiction over the employment security appeal because of his political "interest" and misconduct.

The State filed a motion for summary judgment. Meanwhile, Standal brought on a CR 12(b)(6) motion for dismissal which was denied without prejudice. Later, she brought on a motion for summary judgment which was heard at the same time as the State's motion. The Laynes

opposed these motions, filed a 98–page affidavit, including attachments, and asked for a continuance to enable them to conduct additional discovery. The trial court denied the motion to continue and ruled that the Laynes had failed to show any basis on which their lawsuit could prevail. The court entered written judgments on the summary judgment motions and awarded attorney's fees and costs in the amount of $5,131.10 to the State, and in the amount of $3,945.14 to Standal, against the plaintiffs Thomas J. Layne, Francine B. Layne, Downtown Mini Warehouse, and their attorneys, Richard Glein, and the law firm of Clinton, Fleck & Glein. The Laynes appeal the dismissal of the complaint on the summary judgment motions and the award of fees and costs.

These issues are presented on appeal:

1. Whether there existed any material issue of fact precluding summary judgment in favor of any of the defendants.

2. Whether Standal's motion for summary judgment was barred because the court had considered a CR 12(b)(6) motion previously.

3. Whether the trial court abused its discretion awarding attorney's fees and costs to the State and Standal.

4. Whether this court should award attorney's fees and costs on appeal.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985); *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). On summary judgment motions, the reviewing court takes the position of the trial court, assuming facts most favorable to the nonmoving party. *Wilson v. Steinbach, supra* at 437. The burden is on the moving party to prove there is no genuine issue as to a fact which could

influence the outcome at trial. *Jacobsen v. State,* 89 Wn.2d 104, 108, 569 P.2d 1152 (1977).

A nonmoving party in a summary judgment may not rely on speculation, argumentative assertions that unresolved factual issues remain, or on affidavits considered at face value. After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact. *Meyer v. UW,* 105 Wn.2d 847, 852, 719 P.2d 98 (1986); *Allard v. Board of Regents,* 25 Wn. App. 243, 247, 606 P.2d 280 (1980). The nonmoving party cannot merely claim contrary facts nor rely on speculation, argumentative assertions that unreasonable factual issues remain or on affidavits considered at face value. *Meyer v. UW, supra* at 852.

The Laynes first contend that the trial court committed error in denying the continuance for additional discovery. The denial of a motion for a continuance is reviewable for abuse of discretion. *Bennett v. Bennett,* 63 Wn.2d 404, 387 P.2d 517 (1963); *Lewis v. Bell,* 45 Wn. App. 192, 724 P.2d 425 (1986). In the case at bar, there is sufficient showing in the record of grounds for denying the motion for a continuance. After they previously requested and received several continuances based on the same excuses, the Laynes failed to diligently conduct discovery. *Garrett v. City & Cy. of San Francisco,* 818 F.2d 1515 (9th Cir. 1987), on which the Laynes rely, is inapposite because it involves a motion to compel, not a motion to continue.

The Laynes contend that ALJ Hyde had no jurisdiction over the matter, but do not deny the essential facts of Judge Hyde's jurisdiction. The Laynes admit that LaBox was their employee. They admit that LaBox's employment was terminated or that she quit; and, further, that she applied for unemployment compensation. The Laynes admit that LaBox's application was denied and that she appealed the decision. The Laynes do not deny that the appeal was scheduled to be heard by the OAH, and that

Judge Hyde was assigned to handle the appeal. Nothing further is necessary to show that Judge Hyde had jurisdiction in this case.

■ The Laynes contend that Judge Hyde violated RCW 50.32.010 which provides that no administrative law judge may hear or decide any disputed claim in any case in which he is an *interested* party. The Laynes argue that ALJ Hyde is an interested party because of his alleged political beliefs. However, they cite no supporting case law to this court. The contention that Judge Hyde's political beliefs give rise to an interest or bias warranting disqualification in employment related cases, much less lack of jurisdiction, was squarely rejected in *Andrews v. Agricultural Labor Relations Bd.,* 28 Cal. 3d 781, 623 P.2d 151, 171 Cal. Rptr. 590 (1981). We agree with the holding of that case that even if the nature of a lawyer's practice could be taken as evidence of his political or social outlook, such evidence was irrelevant to prove bias. *See also State Med. Disciplinary Bd. v. Johnston,* 99 Wn.2d 466, 474–75, 663 P.2d 457 (1983) (the court held that a general predilection toward a given result does not prevent a decision in a particular case and is not a deprivation of due process). A Washington court has held that "public service" on a commission or a committee which seeks to change discrimination laws is not a violation of judicial ethics. *In re Staples,* 105 Wn.2d 905, 719 P.2d 558 (1986). More importantly, the Laynes cite no case or statute which holds that a violation of technical conflict of interest statutes deprives the judge, or an administrative law judge, of all jurisdiction to rule in a case. Rather, a conflict of interest might be grounds for requesting a different ALJ to hear the case or possibly grounds for reversal on appeal. The Laynes did not ask for Hyde's removal from the case before hearing, and further Judge Hyde's decision was set aside by the Commissioner for a de novo hearing.

■ ALJ Hyde is protected under the cloak of judicial immunity. In the instant action ALJ Hyde has judicial immunity because at the time of the hearing he was acting in a judicial capacity. *Rayburn v. Seattle,* 42 Wn. App. 163,

165, 709 P.2d 399 (1985), *review denied,* 105 Wn.2d 1007 (1986). *See also Butz v. Economou,* 438 U.S. 478, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978). Judges and those performing judgelike functions are immune from damage liability for acts performed in their official capacities. *Ashelman v. Pope,* 793 F.2d 1072 (9th Cir. 1986). Judges are immune from damage actions for judicial acts taken within the jurisdiction of their courts. *See Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L. Ed. 646 (1872). Immunity afforded judges and those with quasi–judicial capacity is not absolute. A judge lacks immunity where he acts in the clear absence of all jurisdiction or performs an act that is not "judicial" in nature. The factors relevant in determining whether the act is judicial so as to be protected by immunity relate to (1) the nature of the act itself, whether it is a function normally performed by a judge, and (2) the expectations of the parties, whether they dealt with the judge in his judicial capacity. *Ashelman v. Pope, supra.* Here, the record shows that Judge Hyde acted in a judicial nature and had proper jurisdiction.

It is well settled that judges are immune from liability for damages for acts committed within their judicial capacity *even if* accused of acting maliciously and corruptly. *Pierson v. Ray,* 386 U.S. 547, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967); *Filan v. Martin,* 38 Wn. App. 91, 96, 684 P.2d 769 (1984); *Burgess v. Towne,* 13 Wn. App. 954, 538 P.2d 559 (1975). In *Burgess v. Towne, supra,* the court stated:

> It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors maybe [*sic*] corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision–making but to intimidation.

*Burgess,* at 957 (quoting *Pierson v. Ray, supra* at 553–54).

█ Even if there was a claim that a violation of appearance of fairness existed, there is no cause of action in tort

for the violation. *Alger v. Mukilteo,* 107 Wn.2d 541, 547, 730 P.2d 1333 (1987).

■ The other hearings personnel, namely Senior Administrative Law Judge (SALJ) Puzzo and Chief Administrative Law Judge (CALJ) LaRose, the OAH, and the State of Washington are also immune. None of these defendants can be held liable for any acts of Judge Hyde. *Creelman v. Svenning,* 67 Wn.2d 882, 885, 410 P.2d 606 (1966). Because assigning cases to judges is a "judicial act" (*see Johnson v. Manhattan Ry.,* 61 F.2d 934, 938 (2d Cir. 1932), *aff'd,* 289 U.S. 479 (1933)), Puzzo and LaRose are also individually immune from suit on any allegations of impropriety in assigning Judge Hyde to hear LaBox's appeal.

In short, Judge Hyde (1) had judicial immunity; (2) had no personal "interest" in this case as contemplated by the statutes; and (3) had no conflict of interest. He was protected by judicial immunity, there was no violation of appearance of fairness. *See Sherman v. Moloney,* 106 Wn.2d 873, 883–84, 725 P.2d 966 (1986).

The only conclusion that can be reached is that ALJ Hyde, SALJ Puzzo, CALJ LaRose, and the State of Washington were all properly dismissed on the motion for summary judgment.

■ The Laynes contend the summary judgment brought on by Standal was barred because the court had considered a CR 12(b)(6) motion previously and had denied it. This position is untenable since the motion was denied *without prejudice.* The Laynes do not discuss nor cite authority that such an order "without prejudice" prevents the matter being brought forward again. Further, the summary judgment was based on a different theory from the CR 12(b)(6) motion.

A review of the CR 12(b)(6) motion shows that it was dismissed without prejudice on the basis that no duty existed between Standal, as attorney for one party, and the Laynes, the opposing party. *Bowman v. John Doe,* 104 Wn.2d 181, 704 P.2d 140 (1985). The later motion for summary judgment sought dismissal of the Laynes' complaint

and each cause of action on different legal grounds. The Laynes cite no applicable case law for the assertion that the second motion should have been barred. In light of the differences between the motions and the dearth of case law supporting Laynes' position we hold that the trial court did not err in hearing Standal's motion for summary judgment.

The trial court held that the Laynes did not meet their burden of showing a material issue of fact concerning the alleged conspiracy against them by Hyde, LaBox, and Standal. General conclusory allegations are not sufficient to establish the existence of a conspiracy. *Shutt v. Moore*, 26 Wn. App. 450, 453, 613 P.2d 1188 (1980). Laynes' allegations of improper ex parte contact between Hyde and Standal, and further that Hyde and Standal worked together out of the same law offices, and that there was a conspiracy as to the questions asked on the day Standal was not present at the hearing, were not supported by the affidavits before the trial court. The Laynes failed to set forth specific facts which were direct or circumstantial evidence of the existence of a conspiracy. *See Allard v. Board of Regents, supra* at 247, which quotes from *Corbit v. J.I. Case Co.,* 70 Wn.2d 522, 528–29, 424 P.2d 290 (1967), as follows:

> [A]n actionable civil conspiracy exists if two or more persons combine to accomplish an unlawful purpose or combine to accomplish some purpose not in itself unlawful by unlawful means. . . . In order to establish a conspiracy the plaintiff must show that the alleged coconspirators entered into an *agreement* to accomplish the object of the conspiracy.

(Citations omitted.)

The other allegations contained in the complaint against the parties, including Standal, also were not supported by any affidavit or case law; thus, the trial court properly dismissed Standal on her motion for summary judgment as well.

The Laynes assert the trial court abused its discretion in awarding attorney's fees and costs. Under the rationale of

the case of *Hudson v. Moore Business Forms, Inc.*, 827 F.2d 450 (9th Cir. 1987), they claim the cause of action was not frivolous and further argue that the courts should not chill an attorney's enthusiasm or creativity in pursuing new theories in an area of the law which cannot be regarded as settled. The Laynes contend that the area in which they bring this appeal is not well settled. They suggest that in the State of Washington this case is one of first impression regarding personal lawsuits against hearing examiners and the liability thereof.

This court will not overturn a decision to grant or deny attorney's fees absent a showing of abuse of discretion. *See Meyer v. UW,* 105 Wn.2d 847, 856, 719 P.2d 98 (1986). Therefore, the question is whether the court's conclusion was the product of an exercise of discretion that was manifestly unreasonable or based on untenable grounds or reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

A frivolous action has been defined as one that cannot be supported by any rational argument on the law or facts. *Bill of Rights Legal Found. v. Evergreen State College,* 44 Wn. App. 690, 696–97, 723 P.2d 483 (1986), citing *Bennett v. Passic,* 545 F.2d 1260, 1261 (10th Cir. 1976). The law is well settled in the areas of judicial immunity, abuse of process, and conspiracy. This is not a case of a creative theory being applied in an unsettled area of law. Therefore, the trial court did not abuse its discretion in awarding attorney's fees and costs to the State or to Standal pursuant to CR 11 and RCW 4.84.185.

The respondent State of Washington seeks an attorney's fee award as terms for a frivolous appeal. An appeal is frivolous if, considering the entire record and resolving all doubts in favor of the appellant, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that it is so devoid of merit that there is no possibility of reversal. *Boyles v. Department of Retirement Sys.,* 105 Wn.2d 499,

506–07, 716 P.2d 869 (1986); *Hotel Employees & Restaurant Employees, Local 8 v. Jensen,* 51 Wn. App. 676, 690–91, 754 P.2d 1277 (1988). CR 11, which is made applicable to appeals by RAP 18.7, provides in part:

> The signature of a party or of an attorney constitutes a certificate by him that he has read the pleading, motion, or legal memorandum; that to the best of his knowledge, information, and belief, formed after reasonable inquiry *it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.* . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

(Italics ours.) *See Rhinehart v. Seattle Times Co.,* 51 Wn. App. 561, 580–81, 754 P.2d 1243 (1988); *see also Miller v. Badgley,* 51 Wn. App. 285, 299, 753 P.2d 530, *review denied,* 111 Wn.2d 1007 (1988). A party or an attorney, or both, may be assessed litigation expenses, including reasonable attorney's fees, for a CR 11 violation. *See Wilson v. Henkle,* 45 Wn. App. 162, 174, 724 P.2d 1069 (1986). For the same reasons the trial court found the action to be frivolous, this court holds that the appeal is frivolous and awards attorney's fees to the State in the amount of $7,500 plus costs on appeal of $179.65. In addition to CR 11, the State contends the trial court properly awarded attorney's fees under RCW 4.84.185 or 42 U.S.C. §§ 1983, 1988. Those arguments need not be addressed as attorney's fees for a frivolous appeal are available under CR 11 as made applicable to appeals by RAP 18.7.

The decision of the trial court is affirmed. Additionally we award attorney's fees and costs on appeal as outlined above.

SCHOLFIELD and WINSOR, JJ., concur.

Reconsideration denied May 3, 1989.

Review denied at 113 Wn.2d 1016 (1989).