**FILED**
**FEBRUARY 25, 2021**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Sanction Order | ) | |
| Against Attorney | ) | No.  36774-6-III |
| | ) | |
| ROBERT W. CRITCHLOW. | ) | UNPUBLISHED OPINION |
| | ) | |

SIDDOWAY, J. — Robert W. Critchlow appeals CR 11 sanctions that were imposed on him personally in this guardianship proceeding in which he represented Jerome Green. Mr. Green is the son of Mary Green, the alleged incapacitated party.

We disapprove of the guardian ad litem's (GAL's) choice to seek CR 11 sanctions against Mr. Critchlow without first giving him notice of the legal and factual problems with his challenge to the filing of the guardianship petition and her appointment. His persistence in advancing his baseless arguments demonstrates that for the GAL to have provided notice would not have made a difference, however. We affirm the fees and

costs that were awarded at her request to herself and Mary Green's court-appointed lawyer.[1]

We have no criticism of the conduct of the Department of Health and Social Services (Department), but find that the trial court abused its discretion in awarding sanctions to it. The Department did not allege a CR 11 violation or file a motion for sanctions. The GAL's rationale for awarding fees as the sanction (to protect expense from being borne by Ms. Green's estate) does not apply to the Department. We reverse the award of fees and costs in favor of the Department.

FACTS AND PROCEDURAL BACKGROUND

*The prior vulnerable protection order proceeding*

Proceedings in this guardianship action followed on the heels of an action in which the Department obtained a vulnerable adult protection order (VAPO) against Jerome Green, Mr. Critchlow's client, in favor of Mary Green, Mr. Green's mother. Mr. Green lived with his mother and helped with her caregiving. Although several types of neglect were alleged against Mr. Green, Commissioner Jacquelyn High-Edwards found only one: that Mr. Green was not following doctor-recommended feeding precautions to

---

[1] The GAL did not respond to Mr. Critchlow's appeal, having obtained trial court approval not to participate. After Mr. Critchlow challenged her failure to respond late in the appeal proceedings, she filed an explanation, and Mr. Critchlow sought leave to reply to her explanation.

Her explanation is irrelevant to our review, so it has not been considered. No reply is needed or authorized.

protect his mother from choking.  As summarized in this court's recent decision in the

VAPO appeal,[2] then 100-year-old Mary Green, who is blind and suffers from dementia

> has a narrowed esophagus that places her at risk of choking.  Her doctors
> have recommended she eat sitting up and be monitored for 30 minutes after
> eating.  Ms. Green's food must be chopped into small pieces and she is to
> avoid foods that present choking hazards such as nuts and grapes.  Signs
> around Ms. Green's home inform caregivers and family members of Ms.
> Green's dietary needs.

*In re Vulnerable Adult Pet. for Green*, No. 36856-4-III, slip op. at 1-2 (Wash. Ct. Appeals

Feb. 9, 2021) (unpublished).[3]

Mr. Green professed not to know what his mother could or could not eat, which

the Commissioner found inexcusable given the signs placed around the home.  She ruled

that upon demonstrating an understanding of his mother's dietary needs, Mr. Green could

petition to remove restrictions placed on his contact with her.

Mr. Green has a sister who lives nearby and the two were often in conflict over

their mother; the two had obtained five alternating powers of attorney over a six month

period.  Commissioner High-Edwards revoked Mr. Green's power of attorney, observing

that she could not take the same action against the sister, since she was not a party to the

VAPO proceeding.  The Department had revealed during the hearing that it planned to

petition for appointment of a guardian for Mary Green, and the commissioner observed

---

[2] Records of key proceedings in the VAPO action are a part of the record in this appeal.

[3] Https://www.courts.wa.gov/opinions/index.cfm?fa=opinions.showOpinion &filename=368564MAJ.

that the GAL appointed in the guardianship action could petition the court to revoke the sister's power of attorney.

After the commissioner announced her ruling, Mr. Critchlow, who represented Mr. Green at the hearing, expressed concern that one of Mr. Green's sisters might seek to be appointed as Mary Green's guardian. Commissioner High-Edwards responded:

> The guardianship process has procedure for people who want to be appointed guardians to intervene. Mr. Green certainly will be entitled to do that, as well as the sisters, and then the Court in that hearing would be able to determine who's going to be the guardian.

Clerk's Papers (CP) at 189-90.

When Mr. Critchlow asked if the guardianship case would be filed that day, the Department's lawyer responded, "Probably tomorrow since it's 4 already." CP at 193. Then, recalling it was Friday, the lawyer corrected herself and said, "Monday." *Id.* Mr. Critchlow asked if filing on Monday could be in the order, and the commissioner responded, "Sure." *Id.* In marginal modifications to the form VAPO, the commissioner wrote, "The guardianship petition regarding Mary Green shall be filed on Monday, 2/25/19." CP at 201. The VAPO hearing concluded at 4:10 p.m.

*The present guardianship proceeding: events occurring in 2019*

Either that afternoon (February 22) or the following Monday (February 25), the Department submitted its petition for a full guardianship of Mary Green's person and estate and obtained, ex parte, an order appointing a GAL. Both were filed on February

4

25, commencing this action. Mr. Green believes the order was obtained on the afternoon of February 22, since that is the handwritten date entered by Commissioner Tony Rugel, who signed it. The order is date-stamped as filed on February 25, however, as is the petition. The Department contends that Commissioner Rugel simply wrote in the wrong date.

A few days later, Mr. Green, acting pro se, filed a request for special notice of his mother's guardianship proceeding. A couple of weeks after that, Mr. Green filed several handwritten pro se motions, including a motion to intervene in the proceeding.

On March 22, Mr. Critchlow appeared as counsel for Mr. Green in this proceeding and filed additional motions that led to the sanctions at issue in this appeal: motions to strike the order appointing the GAL, to dismiss the guardianship case, and to impose CR 11 sanctions on the Department's lawyer and the GAL. Central to Mr. Critchlow's motions was his belief that there should have been a hearing, with notice to Mary Green, before the guardianship petition could be filed and the order appointing a GAL could be entered. He argued that Mary Green or Mr. Green, as her attorney-in-fact, was entitled to participate in that hearing and contest a finding of incapacity and appointment of the GAL. In requesting CR 11 sanctions he argued it should have been "abundantly clear" to the Department's lawyer and the GAL that Mary Green was entitled to a hearing, with advance notice. CP at 44.

5

On March 29, the Department responded to Mr. Critchlow's motions.  It explained, with citation to relevant statutes, that the petition had been properly filed, that it had been properly served thereafter on Mary Green, and that a hearing to determine whether a guardianship should be established would not take place until April.  It observed that "Mr. Green seems to confuse appointment of a guardian with appointment of a guardian ad litem."  CP at 60.  The Department did not request CR 11 sanctions.

The GAL also filed her opposition on March 29.  She pointed out that under RCW 11.88.090, an opportunity to object to her service as GAL arose *after* her appointment, and the time for objection had passed.  Most of her argument was devoted to a request for sanctions under CR 11.  She argued that Mr. Critchlow had violated a "duty to give written notice" of a perceived violation before filing a CR 11 motion, a duty she argued was imposed by *Biggs v. Vail*, 124 Wn.2d 193, 876 P.2d 448 (1994).  CP at 64.  She did not demonstrate that she fulfilled the duty imposed by *Biggs* by giving notice to Mr. Critchlow before making her own request for CR 11 sanctions.

The pro se motions filed by Mr. Green were heard on March 29 by Commissioner Steven Grovdahl.  Having appeared for Mr. Green, Mr. Critchlow presented the motions on his client's behalf.  Mr. Green's motion to intervene was denied, so he did not become a party to the guardianship proceeding.  The disposition of the motions Mr. Green filed pro se is not the subject matter of this appeal.

Mr. Critchlow does raise as germane the fact he was under the impression on March 29 that Grovdahl was serving as a pro tem *judge*, since Grovdahl was identified as such by a sign outside his courtroom that day. Grovdahl signed orders on March 29 as "Court Commissioner," however, and Mr. Critchlow says this prompted him to start looking into Grovdahl's status. Mr. Critchlow eventually learned that Grovdahl had served as a pro tem judge for a time.[4] In a reply brief filed on April 3, Mr. Critchlow argued that if Grovdahl had been a pro tem *judge* on March 29, then the orders on Mr. Green's pro se motions entered that day were void because Mr. Green had not consented to having them heard by a pro tem judge.

The motions filed by Mr. Critchlow were heard on April 5. At the outset of the hearing, Mr. Critchlow argued that if Grovdahl was a pro tem commissioner, he lacked authority to hear the motions set for hearing that day. Commissioner Grovdahl, confident he was authorized, proceeded to hear argument from the parties. He denied Mr. Critchlow's motions. He agreed with the GAL that the motions were frivolous, and imposed, as sanctions, attorney fees and costs incurred by the GAL, Mary Green's court-appointed lawyer, and the Department. The commissioner granted the GAL's request that the fees be imposed on Mr. Critchlow personally.

---

[4] Records later obtained by Mr. Critchlow in response to a public record request establish that Steven Grovdahl was appointed to serve as a judge pro tempore in November 2018. His appointment as a judge pro tempore lasted through March 14, 2019. He was appointed to serve as a commissioner pro tempore on March 15, 2019.

The written order entered thereafter found that Mr. Green's filings brought through Mr. Critchlow were "frivolous" and "legally [and] factually without merit." CP at 114-15. It directed the lawyers and the GAL to submit their fee requests and stated the court would "allow five days for Robert Critchlow to respond to the fees requested prior to this court issuing an order approving the fees." CP at 115.

The Department's lawyer and the GAL submitted fee declarations in April that were based on hourly rates exceeding a county rate of $60 per hour. Mary Green's court-appointed lawyer initially requested a higher hourly rate but later filed a substitute affidavit that adjusted his request to $60 per hour.[5] Nothing in the record indicates that Mr. Critchlow responded or objected to the amount or calculation of the attorney fee requests.

On May 10, Commissioner Grovdahl issued findings of fact and conclusions of law determining that the fee amounts requested and time worked were reasonable. Mr. Critchlow was ordered to pay the GAL $2,368, the Department $1,350, and Mary Green's court-appointed counsel $420.

Mr. Critchlow filed several notices of appeal in the guardianship proceeding on behalf of Mr. Green. Following a commissioner's ruling on appealability and a motion to modify, Mr. Critchlow was permitted to appeal only the April 5 sanction order and the

---

[5] It is unclear from the record why the pay rate was changed.

8

findings, order, and judgments entered on May 10. He was directed to do so in his own name.

## ANALYSIS

In appealing the sanctions imposed, Mr. Critchlow makes nine assignments of error. In violation of RAP 10.3(a)(4), he fails to present them as a second section of his brief, stated concisely, and with the issues that pertain to them. Instead, he provides them as headings to different sections of his argument. Although it has made review more difficult, we will waive the failure to comply with the rule in the interest of deciding the appeal on the merits. *See* RAP 1.2.

Several issues woven through Mr. Critchlow's argument are outside the scope of the appeal as previously determined by the court, and will not be considered.[6] We analyze his remaining argument as raising three categories of issues.

I.    CONTENTIONS THAT THE DEPARTMENT AND THE GAL FAILED TO COMPLY WITH GUARDIANSHIP NOTICE AND OTHER PROCEDURAL REQUIREMENTS. (STATEMENT OF THE CASE AND ASSIGNMENT OF ERROR C (FIRST))

The appointment of guardians for the estate or person of alleged incapacitated persons is governed by chapter 11.88 RCW. Any person, including the attorney general, may petition for appointment of a guardian or limited guardian for the estate or person of an alleged incapacitated person. RCW 11.88.030(1), (3)(a). If appointed, a guardian will

---

[6] Mr. Critchlow complains, for instance, that the GAL identified a friend to serve as Mary Green's counsel and allowed the lawyer to serve at his private pay rate. He also complains that an ex parte order was later entered allowing the lawyer to withdraw.

often not be appointed for many weeks because of the investigation and reporting that must take place before the appointment decision is made. *See, e.g.*, RCW 11.88.030(6) (presumptive 60-day time frame for hearing). A first step in the process is the appointment of a GAL who the court "*shall* appoint . . . to represent the best interests of the alleged incapacitated person" upon receipt of a petition for appointment of a guardian. RCW 11.88.090(3) (emphasis added).

Not more than five court days after the petition is filed, notice that a guardianship proceeding has been commenced, together with a copy of the petition, shall be personally served on the alleged incapacitated person. RCW 11.88.030(5).

In arguing that a contested hearing is required before appointing a GAL, Mr. Critchlow's motions relied on *In re Marriage of Blakely*, 111 Wn. App. 351, 358, 44 P.3d 924 (2002). But *Blakely* and cases on which it relied deal with RCW 4.08.060, the statute under which the superior court can appoint a GAL for a party to litigation who the court determines is incapacitated and either has no guardian, or whose guardian the court determines is an improper person to appear in the litigation on the party's behalf. The Department properly sought ex parte appointment of the GAL in this guardianship proceeding under RCW 11.88.090(3).[7]

---

[7] In a brief filed on April 1, Mr. Critchlow also relied on the Spokane County Superior Court guardianship policies' discussion of "Contested Appointment" and "Uncontested Appointment" of a GAL. Read as a whole, it is clear that appointment of a GAL for a person who is not represented by counsel is deemed "uncontested" and

The GAL appointed in a guardianship proceeding must be a person found or known by the court to be neutral and to have the requisite knowledge, training or expertise to perform the duties with which GALs are charged. *Id.* Under the Spokane County Superior Court local special proceeding rules, a GAL registry of qualified persons is maintained by a court-appointed committee. LSPR 98.22. By statute, the GAL must serve parties with a statement of her qualifications upon appointment and there is a short window of time in which any party may file a motion for the GAL's removal. RCW 11.88.090(3).

The GAL is charged with investigating the alleged incapacitated person's condition and circumstances and submitting a written report to the court. RCW 11.88.090(5)(b). Absent an extension, the GAL's report is required to be filed with the court and sent to certain interested persons (e.g., immediate family members) within 45

---

appointment of a GAL for a person who already has a lawyer is deemed "contested." Since Mary Green was not represented by counsel when the petition was filed, the following, "Uncontested Appointment" provision applied:

> Where the alleged incapacitated person is not represented by counsel, attorneys or pro se litigants shall contact the Coordinator to receive the first three available GAL names on the Registry and shall select one to serve as GAL. The GAL selected shall be named in the Petition for Guardianship and Order Appointing the Guardian ad Litem. The Coordinator shall initial the original Order Appointing Guardian ad Litem prior to its presentation to the Court.

CP at 84.

days of notice to the GAL that the guardianship proceeding has been commenced, and at

least 15 days before the petition is to be heard.  RCW 11.88.090(5)(f)(ix).

It is only at the hearing on the petition that the court will make a finding on

capacity and determine whether to appoint a full or limited guardian.  RCW 11.88.095.

In this case, consistent with applicable statutes and rules, the attorney general's

office obtained the name of its proposed GAL from the GAL registry, the proposed GAL

agreed to serve, and the proposed GAL was identified in the proposed order submitted or

presented ex parte on February 22 or 25.[8]

The petition was filed and an order appointing the GAL was entered.  No

determination was made at that time that Mary Green was incapacitated or that a guardian

would be appointed.  Mary Green was served with notice of the guardianship proceeding

and petition within five court days after it was filed.  The hearing on the petition was

originally set for April 11, 2019, but was later continued.

There was no basis in law or fact for Mr. Critchlow's arguments advanced on

---

[8] We have no reason to doubt the Department's representation that Commissioner Rugel misdated the order.  But we also see no prejudice to Mr. Green if the petition and proposed order were delivered to Commissioner Rugel on the afternoon of February 22. Evidently, the reason Mr. Critchlow asked at the VAPO hearing about when the petition would be filed was because he was under the mistaken impression that Mary Green would receive advance notice of presentation of the petition and proposed order and he or his client might be able to attend and object.  The Department and Commissioner High-Edwards would have had no reason to suspect this is why Mr. Critchlow wanted to know about the timing.

March 22, 2019, that the Department's actions or those of the GAL violated Mary Green's right to due process or relevant statutes.

II.   CONTENTION THAT COMMISSIONER GROVDAHL "HAD NO JURISDICTION" TO ENTER THE SANCTION ORDER AND JUDGMENT AND HIS "MISREPRESENTATION OF HIS JUDICIAL STATUS TO THE LITIGANTS" CONSTITUTES STRUCTURAL ERROR (ASSIGNMENTS OF ERROR A AND B)

LSPR 98.22(a) states in part:

Orders to Appoint Guardian Ad Litem may be presented to the Guardianship Calendar or to Guardianship Court Commissioner. *Guardianship orders shall not be signed by a Pro Tem Commissioner.*

(emphasis added). Mr. Critchlow argues from the emphasized language that Commissioner Grovdahl, as a pro tem commissioner, had no "jurisdiction" to enter the sanction order. He also argues that Commissioner Grovdahl misrepresented his judicial status.

The Department responds that the intent of the emphasized language was to ensure that pro tem commissioners, who might be unfamiliar with guardianship procedures, will not sign "substantive" orders "determinative of the ultimate guardianship issues." Br. of the Department at 15. It asks us to construe "guardianship orders" as having this narrow meaning.

We need not construe the meaning of "guardianship orders" because any error in failing to comply with the local rule may not be raised for the first time on appeal. The error complained of by Mr. Critchlow is not jurisdictional.

13

*Subject matter jurisdiction*

"'Subject matter jurisdiction' is 'the authority of the court to hear and determine the class of actions to which the case belongs.'" *In re Guardianship of Wells*, 150 Wn. App. 491, 499, 208 P.3d 1126 (2009) (quoting *In re Adoption of Buehl*, 87 Wn.2d 649, 655, 555 P.2d 1334 (1976)). Subject matter jurisdiction may be raised for the first time at any point in a proceeding, even on appeal. *In re Estate of Reugh*, 10 Wn. App. 2d 20, 43, 447 P.3d 544 (2019), *review denied*, 194 Wn.2d 1018, 455 P.3d 128 (2020). Where a court lacks subject matter jurisdiction to issue an order, the order is void. *In re Marriage of Buecking*, 179 Wn.2d 438, 446, 316 P.3d 999 (2013).

Superior court commissioners derive their powers from our state's constitution and statute. *In re Marriage of Lyle*, 199 Wn. App. 629, 632, 398 P.3d 1225 (2017); WASH. CONST., art. IV, § 23; ch. 2.24 RCW. They are conferred with most of the powers of a superior court judge, but may not preside over jury trials. *Lyle*, 199 Wn. App. at 632; WASH. CONST. art. IV, § 23; *State ex rel. Lockhart v. Claypool*, 132 Wash. 374, 375, 232 P. 351 (1925) (duties of judges "at chambers" that commissioners are constitutionally empowered to perform include the power to "entertain, try, hear and determine, all actions, causes, motions, demurrers and other matters not requiring a trial by jury"). Commissioner Grovdahl had the constitutional authority, and hence subject matter jurisdiction, to hear the matters before him on April 5. Failure to comply with a court

14

rule "has nothing to do with subject matter jurisdiction." *Amy v. Kmart of Wash., LLC*, 153 Wn. App. 846, 854, 223 P.3d 1247 (2009).

*Batten v. Abrams*, 28 Wn. App. 737, 626 P.2d 984 (1981), on which Mr. Critchlow relies, is not to the contrary. He describes it as holding that a "local rule being overlooked invalidates the order granting terms." Appellant's Opening Br. at 18. But as this court explained in *State v. Clark*, 195 Wn. App. 868, 876, 381 P.3d 198 (2016), *Batten*, properly read, involves the application of RAP 2.5(a)(2), which permits a party to raise a "failure to establish facts upon which relief can be granted" for the first time on appeal. In *Batten*, the court rule was analyzed, in essence, as the "cause of action" that the respondent contended entitled it to relief. *Batten* held that by failing to show its compliance with the rule, the respondent failed to prove a fact necessary for recovery. *Clark*, 195 Wn. App. at 876. *Batten* does not help Mr. Critchlow.

*Alleged rule violation*

We will not review whether Commissioner Grovdahl exceeded his authority under LSPR 98.22(a) because Mr. Critchlow raises the alleged rule violation for the first time on appeal. *See* RAP 2.5(a); *State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995) (alleged violation of court rule could not be raised for first time on appeal).

Mr. Critchlow did not bring LSPR 98.22 to the attention of Commissioner Grovdahl on April 5, when the commissioner might have referred the motions to another

judicial officer.[9]  He did raise a "point of order" that Grovdahl was a pro tem

commissioner rather than a pro tem judge, but his only challenge to Commissioner

Grovdahl's authority in his point of order was that "the local rules don't authorize court

commissioners to hear civil motions."  RP at 19-20.  Mr. Critchlow also asked his client,

Mr. Green, to make clear that he was not consenting to Commissioner Grovdahl hearing

the motions.  But party consent is only required in proceedings before pro tem judges, not

pro tem commissioners.  *Compare* RCW 2.08.180 and WASH. CONST. art. IV, § 7

(requiring written consent to a case being tried by a judge pro tempore) and chapter 2.24

RCW (no consent requirement).

Any violation of LSPR 98.22 is not reviewable.

*Judicial bias*

Finally, Mr. Critchlow accuses Commissioner Grovdahl of intentionally or

negligently misrepresenting himself to be a judge, which he characterizes as structural

error.  Since he cites *State v. Blizzard*, 195 Wn. App. 717, 727, 381 P.3d 1241 (2016), for

support, he appears to be accusing the commissioner of judicial bias.  This is despite the

fact that Mr. Critchlow does not accuse the commissioner of any of the limited

circumstances that *Blizzard* identifies as presenting unconstitutional judicial bias.[10]

---

[9] The GAL cited the rule in submissions to the court, but not for the proposition
now being argued by Mr. Critchlow.

[10] *Blizzard* identifies circumstances found to create judicial bias as "(1) when a
judge has a financial interest in the outcome of a case, (2) when a judge previously

Mr. Critchlow's scurrilous charge that Commissioner Grovdahl misleadingly held himself out as a judge lacks any credible support. Commissioner Grovdahl did not hold himself out as a judge during the March 29 and April 5 hearings. The following is representative of how he signed his orders:

DATED AND SIGNED IN OPEN COURT THIS 29ᵗʰ DAY OF MARCH 2019.

_____
Judge/Court Commissioner

STEVEN N GROVDAHL

CP at 71; *and see* CP at 72, 74, 115.

Mr. Critchlow nonetheless testifies that a sign outside the courtroom used by Commissioner Grovdahl identified him as a pro tem judge for a couple of weeks after his appointed role became that of pro tem commissioner. It is far-fetched to suppose that the Spokane County Superior Court assigns the responsibility for updating facility placards to its judicial officers. If there was an oversight in updating signage, the only reasonable assumption is that it was someone else's oversight, not Commissioner Grovdahl's.

---

participated in a case in an investigative or prosecutorial capacity, and (3) when an individual with a stake in a case had a significant and disproportionate role in placing a judge on the case through the campaign process." 195 Wn. App. at 727-28. *Blizzard* also observes that "the Supreme Court has suggested, though not held, there may be an impermissible risk of bias when a judge is the recipient of personal criticisms that are highly offensive." *Id.*

The issue is, in any event, a red herring. By the time the sanctions were imposed on April 5, Mr. Critchlow was on notice that Steven Grovdahl was serving as a commissioner.

III.     CONTENTIONS THAT MR. CRITCHLOW'S RIGHTS WERE VIOLATED WHEN CR 11
         SANCTIONS WERE ORDERED WITHOUT REQUIRED PROCEDURAL SAFEGUARDS
         (ASSIGNMENTS OF ERROR C (SECOND), D, E AND F)

Mr. Critchlow contends he was denied due process because CR 11 sanctions were imposed without the parties or court complying with procedural safeguards to which he was entitled. CR 11 procedures must comport with due process requirements. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 224, 829 P.2d 1099 (1992). Review of questions of law, such as constitutional due process guaranties, is de novo. *State v. Derenoff*, 182 Wn. App. 458, 465, 332 P.3d 1001 (2014). We otherwise review a superior court's imposition of CR 11 sanctions for an abuse of discretion. *Biggs*, 124 Wn.2d at 197.

*No formal motion or notice of hearing*

Mr. Critchlow complains that no formal motion requesting CR 11 sanctions was ever filed or duly noted for a hearing.

While due process requires notice and an opportunity to be heard, the notice does not need to be in the form of a freestanding motion that is noted for hearing in accordance with time requirements for motions. *Bryant*, 119 Wn.2d at 224. Our Supreme Court has held that when a party objected in a reply brief that opposing counsel's motion warranted sanctions, the notice provided by the brief and the opportunity to oppose the sanctions

18

request at the hearing satisfied due process. *Id.* Other cases are in accord. *See In re Marriage of Rich*, 80 Wn. App. 252, 257-58, 907 P.2d 1234 (1996) (where no motion was made but an intent to seek sanctions was raised orally in court and a written notice of a party's intention to seek sanctions was thereafter filed and served, due process was satisfied); *King County Water Dist. No. 90 v. City of Renton*, 88 Wn. App. 214, 231, 944 P.2d 1067 (1997) (due process was satisfied where request for sanctions was raised in reply brief and—while no hearing was set or conducted—offending party had time to respond before order was entered and could have moved for reconsideration); *Watness v. City of Seattle*, 11 Wn. App. 2d 722, 734, 457 P.3d 1177 (2019) (motion for sanctions was filed only four days before it was granted without a hearing; due process was not violated where responding party was able to file a reply), *review denied*, 195 Wn.2d 1019, 464 P.3d 205 (2020).

Here, the GAL's March 29 brief opposing the motions filed by Mr. Critchlow included her request for CR 11 sanctions—indeed, most of her brief was devoted to her request for sanctions. She reiterated her request for CR 11 sanctions in a brief filed on April 3. Mr. Critchlow did not dispute receiving the GAL's briefs and responded to the request for sanctions in a reply brief that he filed on April 3. He also had an opportunity to address the request for CR 11 sanctions at the April 5 hearing. He received due process.

*Sanctions against counsel rather than client*

It is a conflict of interest for a self-represented lawyer to argue that sanctions should have been imposed on his client instead of on the lawyer. *In re Marriage of Wixom*, 182 Wn. App. 881, 908, 332 P.3d 1063 (2014). Since Mr. Critchlow is self-represented, we will not consider this argument.

That said, we point out that sanctions may be imposed on a party or an attorney, or both. *Wilson v. Henkle*, 45 Wn. App. 162, 174, 724 P.2d 1069 (1986); *Layne v. Hyde*, 54 Wn. App. 125, 136, 773 P.2d 83 (1989).

*Constitutional arguments as nonsanctionable*

Mr. Critchlow argues that "as a matter of law" he cannot be sanctioned for raising issues of constitutional due process. Appellant's Opening Br. at 43. The authority on which he relies is a dissenting opinion in which it is observed that "a *debatable* issue of first impression raising a constitutional question is no more a violation of CR 11 than it is a violation of RCW 4.84.185." *State ex rel. Quick-Ruben v. Verharen*, 136 Wn.2d 888, 909, 969 P.2d 64 (1998) (Sanders, J., dissenting) (emphasis added) (citing *Hicks v. Edwards*, 75 Wn. App. 156, 163, 876 P.2d 953 (1994)). Constitutional arguments that lack a basis in law or fact and are advanced without a reasonable inquiry, or that are advanced for an improper purpose, are as sanctionable under CR 11 as are nonconstitutional issues.

*Failure to give advance notice*

"[W]ithout prompt notice regarding a potential violation of [CR 11], the offending party is given no opportunity to mitigate the sanction by amending or withdrawing the offending paper." *Biggs*, 124 Wn.2d at 198. "Prompt notice of the possibility of sanctions fulfills the primary purpose of [CR 11], which is to deter litigation abuses." *Id.* In *Biggs*, our Supreme Court "adopt[ed] as [its] own" the advice of a federal rules advisory committee that

> in most cases, "counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a [CR 11] motion." Fed. R. Civ. P. 11 advisory committee note, 28 U.S.C.A. 186 (West Supp. 1994). Such informal notice is not a substitute for a CR 11 motion, but evidence of such informal notice, or lack thereof, should be considered by a trial court in fashioning an appropriate sanction.

*Id.* at 198 n.2 (third alteration in original).

Mr. Critchlow points out that the GAL did not give him informal notice of a potential violation before filing her brief asking for CR 11 sanctions. A situation like this one—where the responding lawyer, the GAL, is a specialist in an area of law and the alleged CR 11 offender, Mr. Critchlow, is not—epitomizes why *Biggs* imposes a duty to provide an offender with notice and an opportunity to withdraw an ungrounded position before asking the court to impose CR 11 sanctions. Mr. Critchlow filed his motions on March 22 and the GAL did not respond until March 29. The GAL should have given Mr.

Critchlow informal notice of his misunderstanding of procedure before asking for CR 11 sanctions.

Because she did not, we might well have reversed the GAL's sanctions award if Mr. Critchlow had backed away from his erroneous positions and challenged only the imposition of sanctions. Upon learning that sanctions would be sought, however, Mr. Critchlow doubled down on his meritless arguments. That compels the conclusion that for the GAL to have responded more professionally would not have made a difference.

The superior court was aware that this might be a private payment guardianship, with the fees and costs of the GAL and Mary Green's court-appointed counsel coming out of Ms. Green's assets. We find no abuse of discretion in the decision to impose those fees and costs as sanctions.

Ms. Green's estate was not chargeable with the cost of the Department's lawyer, however. The Department did not move for CR 11 sanctions or give notice to Mr. Critchlow before the April 5 hearing that it might seek them. It merely responded to the superior court's direction to submit a fee request. We have no criticism of the Department's conduct in the matter. But we conclude that the sanctions order in the Department's favor offends *Biggs* and related cases. CR 11 is not a mechanism for providing attorney fees to a prevailing party where such fees would otherwise be unavailable. *Bryant*, 119 Wn.2d at 220.

*Entry of sanctions order ex parte*

Mr. Critchlow contends that final orders and judgments were entered on the sanctions on May 10, 2019 ex parte, without him having the opportunity to be present.

The April 5 order imposing sanctions stated in relevant part:

> 8. Counsel and the Guardian ad Litem shall submit their fees and a proposed order on fees to Comm. Grovdahl directly & this court will allow five days for Robert Critchlow to respond to the fees requested prior to this court issuing an order approving the fees and signing a judgment summary in ex-parte fashion.

CP at 115. Mr. Critchlow signed the April 5 order, indicating "Objected to based on no jurisdiction of commissioner to hear the matters." *Id*. The record on appeal includes declarations supporting fee requests filed by the Department and the GAL on April 26, 2019.

On May 10, 2019, Commissioner Grovdahl entered findings of fact and conclusions of law, a further order imposing sanctions, and judgment summaries reflecting the three fee awards. The findings and conclusions recite that declarations supporting fee requests were received from the GAL, the Department, and counsel for Ms. Green.

The findings, order, and judgments entered on May 10 include matters to which Mr. Critchlow objects on appeal. Mr. Critchlow was permitted to respond to proposed orders and fee requests in writing, within five days of their receipt, but did not. It appears

he was afforded that opportunity;[11] there is nothing in the record to suggest that he was not. The party appealing sanctions has the responsibility to submit a record adequate to permit review. *Sarvis v. Land Res., Inc.*, 62 Wn. App. 888, 894, 815 P.2d 840 (1991).

If Mr. Critchlow had objections, he should have raised them in the trial court. We will not consider objections raised for the first time on appeal. RAP 2.5(a).

*Excessive hourly rate and "self dealing"*

Mr. Critchlow contends the hourly rates requested by the GAL and court-appointed counsel for Ms. Green were excessive private pay rates, rather than the county pay rate, which he asserts was ordered at some point by Judge Annette Plese. He characterizes this as "self-dealing." Appellant's Opening Br. at 42-43.

Again, Commissioner Grovdahl's sanctions order stated that Mr. Critchlow had five days to respond to the declarations for fees. If Mr. Critchlow had an issue with the amount of fees requested, he needed to raise it in the trial court.

---

[11] The GAL, the Department's lawyer and counsel for Ms. Green each presented or signed off on the materials affecting them. A signature block on the findings and conclusions and further order imposing sanctions is included for Mr. Critchlow, and states, "Notice of presentment provided to . . . ROBERT CRITCHLOW." CP at 243, 245. It is unsigned.

We affirm the imposition of sanctions in favor of the GAL and Mary Green's court-appointed counsel and the associated judgment summaries. We reverse the imposition of sanctions in favor of the Department and its associated judgment summary.[12]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:


_____
Lawrence-Berrey, J.


_____
Staab, J.

_____

[12] Mr. Critchlow advances two theories under which he argues he is entitled to be awarded fees and costs on appeal. Both depend on a demonstration, which he has not made, that his actions in the trial court were justified and the actions of the GAL and Department were not. His request for fees and costs is denied.